691 A.2d 403

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. RUEL G. ELLIS, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 19, 1997—Decided April 10, 1997.

Before Judges MICHELS, KLEINER and COBURN.

*Susan L. Reisner,* Public Defender, attorney for appellant (*William Welaj,* Designated Counsel, of counsel and on the brief).

*Charles R. Buckley,* Deputy Attorney General—In Charge, Acting Bergen County Prosecutor, attorney for respondent (*Annmarie Cozzi,* Special Deputy Attorney General, Acting Assistant Bergen County Prosecutor, of counsel and on the letter brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Tried to a jury *in absentia,* defendant Ruel Ellis was found guilty of (1) attempted murder in violation of *N.J.S.A.* 2C:5–1 and *N.J.S.A.* 2C:11–3 (First Count); (2) three counts of aggravated assault in violation of *N.J.S.A.* 2C:12–1b(1) (Second, Fifth, and Eighth Counts); (3) three counts of aggravated assault in violation of *N.J.S.A.* 2C:12–1b(2) (Third, Sixth, and Ninth Counts); (4) three counts of aggravated assault in violation of *N.J.S.A.* 2C:12–1b(4) (Fourth, Seventh, and Tenth Counts); and (5) possession of

a handgun with the purpose to use it unlawfully against the person of another in violation of *N.J.S.A.* 2C:39–4a (Eleventh Count).

Defendant's motion for a new trial on the ground that his constitutional rights were violated by virtue of his absence from the trial was denied by the trial court. The trial court then merged defendant's convictions for aggravated assault under the Second, Third, and Fourth Counts and his conviction for possession of a weapon with the purpose to use it unlawfully against the person of another under the Eleventh Count into his conviction for attempted murder under the First Count. The trial court also merged defendant's convictions for aggravated assault under the Sixth and Seventh Counts into his conviction for aggravated assault under the Fifth Count and merged defendant's convictions for aggravated assault under the Ninth and Tenth Counts into his conviction for aggravated assault under the Eighth Count. For defendant's attempted murder conviction under the First Count, the trial court committed defendant to the custody of the Commissioner of the Department of Corrections (Commissioner) for twenty years with a ten-year period of parole ineligibility and imposed a $30 Violent Crimes Compensation Board (VCCB) penalty on defendant. In addition, for defendant's aggravated assault convictions under the Fifth and Eighth Counts, the trial court committed defendant to the custody of the Commissioner for concurrent terms of ten years and assessed defendant with VCCB penalties totaling $60. Defendant appealed.

Defendant seeks a reversal of his convictions or, alternatively, a modification of his sentences on the following grounds:

*POINT I:* THE TRIAL COURT ERRED BY RULING THAT THE TRIAL SHOULD COMMENCE AND PROCEED TO ITS CONCLUSION IN THE DEFENDANT'S ABSENCE.

*POINT II:* THE DEFENDANT WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

*POINT III:* THE JURY'S VERDICTS WITH RESPECT TO COUNTS I THROUGH XI WERE INCONSISTENT, ILLOGICAL AND THE RESULT OF COMPROMISE AS A RESULT OF ITS NOT GUILTY VERDICT WITH RESPECT TO COUNT XII.

*POINT IV:* THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.

In a *pro se* supplemental brief, defendant raises the following additional issue:

> THE TRIAL JUDGE ABUSED ITS DISCRETION BY FAILING TO QUESTION THE JURY AS TO WHETHER OR NOT THEY HAD THE OPPORTUNITY TO REVIEW ANY OF THE MATERIALS PLACED ON THE EVIDENCE TABLE.

We have carefully considered these contentions and all arguments advanced in support thereof by defendant through counsel and in his *pro se* supplemental brief and find that they are without merit and warrant only the following discussion in a written opinion. *R.* 2:11–3(e)(2).

## I.

Defendant contends that the trial court erred in permitting the trial to proceed in his absence since his absence was not knowing, voluntary, and unjustified. Defendant also claims that, for the same reason, the trial court erred in denying his motion for a new trial. Defendant argues that he was never expressly informed on the day of trial that if he was not present, the trial would proceed in his absence. In addition, defendant asserts that, during the motion for a new trial, the prosecutors's statement that Judge DiGisi warned defendant what could occur if he did not appear and the trial court's recollection that such warnings were standard for Judge DiGisi, were not definitive proof that he (defendant) was so warned because both the prosecutor and the trial court could have erred. Finally, defendant claims that he did not deliberately absent himself from the trial because he would not have wasted his time preparing the case for trial with his attorney and he would never have appeared in court on September 30, 1991, if it had been his intention to absent himself from the trial.

The record shows that at defendant's arraignment on June 7, 1991, the following exchange took place between Judge DiGisi and defendant:

> The Court: *I further advise you that you have an absolute right to be present at every stage of the proceeding.*

*If you do not appear at any subsequently established trial date, your case can proceed without you being present or may proceed without you being present.* A warrant will be issued for your arrest and your bail will be canceled and forfeited. *Do you understand that?*

The defendant: *Yes, sir.*

[Emphases added.]

At the calendar call of defendant's case on the morning of September 30, 1991, the following exchange took place among Judge DiGisi, defendant, and the prosecutor:

The clerk: Ruel Ellis.

The defendant: Here.

The Court: Is your lawyer here, Mr. Ellis?

The defendant: No, I don't see him.

[The prosecutor]: Judge, he called.... and told me he would be here at around ten o'clock. He told me he called your chambers.

The Court: That's right.

[The prosecutor]: I am ready judge.

The Court: Good. *I'm ready for you too. We'll get you out right away at ten o'clock....*

. . . .

(Recess.)

The Court: Ruel Ellis.

[The prosecutor]: Tony Fusco is defense.

The Court: Are you ready, gentlemen?

[The prosecutor]: Yes, Judge.

The Court: *Go right up to Judge Kuechenmeister he's ready to start your trial. Judge Kuechenmeister please.*

[Emphases added.]

In the early afternoon of the same day, September 30, 1991, after Judge DiGisi had assigned defendant's case to Judge Kuechenmeister for trial, the following exchange took place among Judge Kuechenmeister, the prosecutor, and defendant's attorney:

[Defense counsel]: Your Honor, it is about five after two, at least on my watch. This is the matter of State -vs- Ruel Ellis, indictment S–600–89. *My client appeared before Judge DiGisi this morning promptly at 9:00.* Although I did not appear there until, *I'd say ten after ten, we went through a calendar call and Judge DiGisi—we were sent up to you approximately, I would say, 11:00,* in that range, 11:15, and I say approximately. *My client came up to the courtroom, and in fact was in the courtroom at one point in time and was outside....* He was seated on the bench for [a w]hile, went down had a cup of coffee with me and his

friend, then went on his way, I assume, back up to your court room. *I came back up here and we had a pretrial conference in your chambers. When we came out here he was nowhere to be found.* I believe this was a quarter to 12, ten to 12 when you told us to come back at 1:30.

*Well, it's now, as I indicated, five after two. He is gone. He's just nowhere that I can find him. I've no reason to understand why to account for his absence, none whatsoever.*

I must state that as an officer of the court I can state he was in my office on Saturday and we prepared the case. He gave me some witnesses that he wished to have called and I provided them to the prosecutor. I ha[d] no reason to anticipate he would not show up for trial.

He did, I have to say Judge, asked—*I would have to state that he knew this as a trial date, that's all I have to say.*

The Court: Prosecutor?

[The prosecutor]: . . . .

I agree with what [defense counsel] has stated. *The defendant, Ruel Ellis, was in Judge DiGisi's court 9:00 when I arrived there this morning. We were sent up approximately 10:30 or 11:00, somewhere in that area. Judge DiGisi on the record at this point stated that the case was going up to your Honor for trial. . . . [W]hen we went to begin . . . this morning, approximately a quarter to 12, the defendant was nowhere to be found. . . . It is now a quarter after two, the defendant is nowhere to be found to my knowledge in the courthouse.*

. . . .

*In addition, State -vs- Hudson, the State would ask to proceed with trial. State -vs- Hudson, 119, 165, I believe is directly on point and permits the Court to allow the State to proceed to trial.*

We have been prejudiced by the defendant's absence up until this point, and to delay it any further at his control would be further prejudicial to the State.

[Defense counsel]: Again, I take no position with regard to that. . . .

. . . .

The Court: *[The trial is] going to proceed. . . . It's going to start.*

[Emphases added.]

On October 1, 1991, before the State called its first witness, the following colloquy took place among Judge Kuechenmeister, the prosecutor, and defendant's attorney:

[Defense counsel]: Your Honor, *I'd like to have* [the defendant's attorney who was present yesterday,] Mr. Fusco's motion—that *the matter be adjourned to enable us to locate [defendant.]*

The Court: Counsel, [defendant] was here yesterday and *it was sent out for trial and he voluntarily absented himself. . . . The process has started.*

[Defense counsel]: *I believe,* though in accordance with *State -vs- Hudson, there has to be some showing that Mr. Ellis understood that it would commence.*

> The Court: It was Judge DiGisi who sent it out for trial, and [defendant] accompanied Mr. Fusco here. *He started in on the motions and [defendant] disappeared, so I was convinced [defendant] was aware of it.*
>
> [The prosecutor]: Judge, also for the record, I was in Judge DiGisi's court, he called the case for trial, and *[defendant] came up to counsel table with Mr. Fusco, and Judge DiGisi said words to the effect, please go up to Judge Kuechenmeister's for trial.*

[Emphases added.]

We are convinced from our study of the record that there was sufficient credible evidence to support the trial court's determination that defendant voluntarily and knowingly waived his right to be present during trial and that his absence was inexcusable. The trial court, therefore, properly proceeded with the trial and properly denied defendant's motion for a new trial on the ground that he was improperly tried *in absentia.*

Both the United States and New Jersey Constitutions provide that an accused will have the right to be confronted with witnesses against him/her. *U.S. Const.* amend. VI; *N.J. Const.* art. I, ¶ 10. Included within this right is an accused's right to be present in court at every stage of his/her trial. *See Illinois v. Allen,* 397 *U.S.* 337, 338, 90 *S.Ct.* 1057, 1058, 25 *L.Ed.*2d 353, 356 (1970); *State v. Hudson,* 119 *N.J.* 165, 171, 574 *A.*2d 434 (1990). A defendant's presence at his/her own trial is also important for Fourteenth Amendment due process purposes because the right "is a condition of due process to the extent that a fair and just hearing would be thwarted by [the defendant's] absence[.]" *Snyder v. Massachusetts,* 291 *U.S.* 97, 107–08, 54 *S.Ct.* 330, 333, 78 *L.Ed.* 674, 679 (1934), *overruled on other grounds, Duncan v. Louisiana,* 391 *U.S.* 145, 88 *S.Ct.* 1444, 20 *L.Ed.*2d 491 (1968).

At the time of defendant's trial, *R.* 3:16 provided in pertinent part that

> [t]he defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, unless otherwise provided by rule, but the defendant's voluntary absence after trial has commenced in his presence shall not prevent its continuing to and including the return of the verdict....

In *State v. Hudson, supra,* 119 *N.J.* at 167, 181, 574 *A.*2d 434, our Supreme Court announced that it could not distinguish between a defendant who leaves the court shortly after trial begins and one who leaves after being informed that trial is about to begin because both cases "indicate[ ] a defiance of the judicial system and can lead to a severe disruption of the criminal calendar." (Citation omitted). Thus, the *Hudson* Court held that "a defendant's knowing, voluntary, and unjustified absence before or after trial has commenced does not prevent trial from proceeding *in absentia." Id.* at 182, 574 *A.*2d 434.

Nevertheless, the Court cautioned that "[a]dequate notice to the defendant is an essential element of a knowing waiver of the right to attend trial." *Ibid.* The *Hudson* Court continued: "The best opportunity to provide such notice is at the arraignment, where a defendant is informed of other significant protections, such as the right to counsel." *Ibid.* The Court in *Hudson* then fashioned the following rule regarding a trial *in absentia:*

> We hold that a defendant's inexcusable absence from trial, under circumstances demonstrating knowledge of the time and place of trial, the right to be present, and that the trial may proceed if defendant is absent, constitutes a sufficient basis for a trial court's decision to proceed.
>
> [*Id.* at 183, 574 *A.*2d 434.]

The *Hudson* Court concluded that there was ample evidence in the record to support the trial court's finding that the defendants in the matter before it waived their right to be present at trial. *Ibid.* Although the defendants had not been warned at their arraignment of their right to be present at trial, the Court in *Hudson* found that the defendants had such knowledge because they appeared in court on the day their case was scheduled for trial. *Id.* at 182–83, 574 *A.*2d 434. In addition, the *Hudson* Court noted that neither defendant claimed that he was uninformed about the day or time his trial would start. *Id.* at 183, 574 *A.*2d 434.

Following the Court's decision in *State v. Hudson, supra,* R. 3:16 was amended in 1992, *see* Pressler, *Current N.J. Court Rules,* comment on *R.* 3:16 (1997), and now reads in part:

> The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, unless otherwise provided by Rule. Nothing in this Rule, however, shall prevent a defendant from waiving the right to be present at trial. A waiver may be found either from (a) the defendant's express written or oral waiver placed on the record, or (b) the defendant's conduct evidencing a knowing, voluntary, and unjustified absence after (1) the defendant has received actual notice in court of the trial date, or (2) trial has commenced in defendant's presence. . . .

We recently reiterated that a defendant had to receive actual notice of his/her trial date in order to waive his/her right to appear at trial, stating:

> While an attorney undoubtedly has the duty to inform his client of all scheduled proceedings, our rules and earlier decisions require that defendant actually be notified of the trial date.
>
> *We hold that in order to sustain a waiver of the right to be present, it must be shown the trial date was actually communicated to the defendant and the accused unjustifiably failed to appear.*
>
> [*State v. Davis*, 281 *N.J.Super.* 410, 415–16, 658 *A.2d* 303 (App.Div.1995) (emphasis added) (citation omitted), *certif. denied*, 145 *N.J.* 376, 678 *A.2d* 716 (1996).]

*See also State v. Finklea*, 147 *N.J.* 211, 213, 686 *A.2d* 322 (1996) ("We hold that *once a defendant has been given actual notice of a scheduled trial date*, nonappearance on the scheduled or adjourned trial date is deemed a waiver of the right to be present during the trial absent a showing of justification by the defendant." (emphasis added)). Nevertheless, we also recently held that in addition to actual notice, a defendant can agree to receive notice of an as-yet undetermined trial date from his/her attorney if he/she agrees, on the record, to receive such notice. *State v. Mahone*, 297 *N.J.Super.* 524, 528, 688 *A.2d* 658 (App.Div.1997).

Here, defendant knowingly, voluntarily, and inexcusably absented himself from trial. Defendant had been advised by Judge DiGisi that he had the right to be present at all proceedings and also had been informed that all proceedings could continue without him if he refused to appear. When Judge DiGisi asked him if he understood this right and potential waiver, defendant replied unequivocally, "Yes, sir." In addition, defendant was notified of this information at his arraignment, the proceeding at which the *Hudson* Court suggested such notice be given. More

importantly, defendant had actual knowledge of his trial date. During defendant's calendar call on September 30, 1991, Judge DiGisi said, in defendant's presence, "I'm ready for you too. We'll get you out right away at ten o'clock." Judge DiGisi then instructed, "Go right up to Judge Kuechenmeister, he's ready to start your trial." Clearly, the trial court actually communicated to defendant that his trial was about to begin.

Under the circumstances, defendant waived his right to be present during the trial, and, therefore, the trial court properly proceeded with the trial in his absence and properly denied his motion for a new trial on the ground that the trial court erred in trying him *in absentia.*

## II.

We are also satisfied that defendant was not denied effective assistance of counsel because Anthony Fusco, Esq., whom defendant had retained, had his associate, Clare Pessolano, Esq., represent defendant at trial.

Both the federal and state constitutions grant a criminal defendant the right to assistance of counsel. *U.S. Const.* amend. VI; *N.J. Const.* art. I, ¶ 10. The United States Supreme Court has recognized that the right to counsel encompasses the right to effective assistance of counsel. *Strickland v. Washington,* 466 *U.S.* 668, 686, 104 *S.Ct.* 2052, 2063, 80 *L.Ed.*2d 674, 692 (1984). In *Strickland v. Washington, supra,* the United States Supreme Court set forth a two prong test to determine whether "counsel's assistance was so defective as to require reversal of a [defendant's] conviction":

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable....
>
> [*Id.* at 687, 104 *S.Ct.* at 2064, 80 *L.Ed.*2d at 693.]

As to the first prong, an attorney's deficient performance, the *Strickland* Court announced that an attorney's performance is judged by a standard of "reasonably effective assistance." *Ibid.* While noting that a court must consider all circumstances in determining the reasonableness of an attorney's performance, the Supreme Court cautioned that "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Id.* at 688–89, 104 *S.Ct.* at 2065, 80 *L.Ed.*2d at 694. The Court in *Strickland* then stated that there is a "strong presumption" that a counsel's performance falls within the broad range of reasonable professional assistance. *Id.* at 689, 104 *S.Ct.* at 2065, 80 *L.Ed.*2d at 694. Accordingly, to fulfill the first prong of an ineffective assistance claim, the Supreme Court announced that

> [a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.
>
> [*Id.* at 690, 104 *S.Ct.* at 2066, 80 *L.Ed.*2d at 695.]

The *Strickland* Court then announced that even if a defendant overcomes the first prong, he/she must still meet the second element because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691, 104 *S.Ct.* at 2066, 80 *L.Ed.*2d at 696. Therefore, unless prejudice was presumed, the Supreme Court ruled that a defendant must prove prejudice. *Id.* at 692–93, 104 *S.Ct.* at 2067, 80 *L.Ed.*2d at 696–97. The Supreme Court in *Strickland* then determined that to establish such prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 *S.Ct.* at 2068, 80 *L.Ed.*2d at 698.

In *United States v. Cronic*, 466 *U.S.* 648, 658–62, 104 *S.Ct.* 2039, 2046–48, 80 *L.Ed.*2d 657, 667–70 (1984), decided the same day as *Strickland v. Washington, supra,* the Supreme Court of the Unites States addressed the second prong of the *Strickland* test— showing counsel's performance prejudiced defendant—and held that in certain circumstances prejudice would be presumed and a finding of ineffective assistance of counsel would be entered as a matter of law. The *Cronic* Court gave three examples of such presumed prejudice: (1) when a defendant is completely denied counsel; (2) when a defendant's counsel completely fails to subject the prosecutions's case to "meaningful adversarial testing"; and (3) when, under the surrounding circumstances, the designation of counsel is so close to trial as to amount to a denial of effective and significant aid. *Id.* at 659–61, 104 *S.Ct.* at 2047–48, 80 *L.Ed.*2d at 668–69. In the last situation, however, the *Cronic* Court warned that not every case in which a court refuses to postpone a trial would give rise to such a presumption. *Id.* at 661, 104 *S.Ct.* at 2048, 80 *L.Ed.*2d at 669.

In *State v. Fritz*, 105 *N.J.* 42, 58, 519 *A.*2d 336 (1987), our Supreme Court adopted the *Strickland* and *Cronic* tests for ineffective assistance of counsel. In *Fritz,* over two years after he had been indicted, the defendant met with his attorney, who was assigned by the public defender's office, in December of 1982 about a possible plea bargain. *Id.* at 47, 519 *A.*2d 336. The attorney then received a trial notice on April 28, 1983 setting Monday, May 9th, as the trial date. *Ibid.* The attorney, however, did not learn until the Friday preceding the Monday date that the trial was actually going forward. *Id.* at 48, 519 *A.*2d 336. On the morning of trial, the attorney requested a continuance stating that he had only had his first serious discussion with his client that morning, had not ordered a copy of the probable cause transcript, and had not contacted witnesses. *Ibid.* The trial court denied his

motion, noting that the first day was only for jury selection so the attorney had from that evening until the following morning to prepare for trial. *Ibid.* The defendant was convicted and appealed arguing that he was denied effective assistance of counsel. *Id.* at 48–49, 519 *A.*2d 336.

In addressing whether it would apply the *Strickland* and *Cronic* tests, the Court in *Fritz* announced:

> Even if we are not constitutionally compelled to adopt the *Strickland–Cronic* test, the development of the law in this area impels us to conclude that we should recognize the soundness and efficacy of both the substance and formulation of this federal Constitutional standard in defining our own State Constitutional guarantee of effective assistance of counsel. We therefore hold that under Article I, paragraph 10 of the State Constitution a criminal defendant is entitled to the assistance of reasonably competent counsel, and that if counsel's performance has been so deficient as to create a reasonable probability that these deficiencies materially contributed to defendant' conviction, the constitutional right will have been violated.
>
> [*Id.* at 58, 519 *A.*2d 336.]

The *Fritz* Court then noted, in discussing *Cronic*'s presumptive prejudice standard, that "no federal court has reversed a criminal conviction, pursuant to *Cronic*, based solely on the ground of inadequate attorney preparation, whether attributable to the trial court's refusal of a continuance or not." *Id.* at 61–62, 519 *A.*2d 336. *See also id.* at 61 n. 3, 519 *A.*2d 336 ("The vast majority of [S]ixth [A]mendment claims based upon inadequate preparation continue to be rejected regardless of whether the inadequate preparation is traceable to the haste of the trial court or the incompetence of the trial attorney.") Based on this judicial experience, the *Fritz* Court concluded that no *Cronic* situation of presumed prejudice had occurred in the case before it because the attorney spoke to the defendant about the proffered plea bargain, the attorney had at least one full day to prepare for trial, and the case did not present overly complicated or difficult issues for an experienced criminal defense attorney. *Id.* at 63, 519 *A.*2d 336.

In addition to the constitutional right to assistance of counsel requiring that the assistance be effective, the right generally permits a defendant to secure counsel of his/her own choice. *See*

*Crooker v. California*, 357 *U.S.* 433, 439, 78 *S.Ct.* 1287, 1291, 2 *L.Ed.*2d 1448, 1454 (1958), *overruled on other grounds, Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966); *State v. Furguson*, 198 *N.J.Super.* 395, 401, 487 *A.*2d 730 (App. Div.), *certif. denied*, 101 *N.J.* 266, 501 *A.*2d 933 (1985). Nevertheless, an accused does not have an absolute right to the counsel of his/her own choice. *See Wheat v. United States*, 486 *U.S.* 153, 159, 108 *S.Ct.* 1692, 1697, 100 *L.Ed.*2d 140, 148 (1988); *United States ex rel. Carey v. Rundle*, 409 *F.*2d 1210, 1215 (3d Cir.1969), *cert. denied*, 397 *U.S.* 946, 90 *S.Ct.* 964, 25 *L. Ed.*2d 127 (1970); *State v. Crisafi*, 128 *N.J.* 499, 517, 608 *A.*2d 317 (1992).

█ Contrary to defendant's claim, Ms. Pessolano was involved with his case before trial and obviously was familiar with defendant's case. Moreover, Ms. Pessolano appeared at defendant's arraignment, attended the pretrial conference, and submitted motion papers to suppress evidence. While Ms. Pessolano may not have had defendant to confer with during the trial, that was defendant's doing. Furthermore, this case, like the case in *State v. Fritz, supra,* was not a difficult or extraordinarily complex case factually or legally.

In addition, defendant has failed to point to any one aspect of this case showing that Ms. Pessolano's performance was deficient or not reasonably effective, the first element of the two-pronged *Strickland* analysis. *See Strickland v. Washington, supra,* 466 *U.S.* at 690, 104 *S.Ct.* at 2066, 80 *L.Ed.*2d at 695 ("[A] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."). Defendant simply has not met his burden under *Strickland v. Washington, supra.*

In any event, we are satisfied that Ms. Pessolano gave defendant reasonable professional assistance at trial and that she adequately defended defendant's rights at trial. She cross-examined every prosecution witness with the exception of one victim's treating physician. In so doing, she attacked the witnesses'

credibility by inquiring into whether their perceptions were affected, questioning the accuracy of their memories, determining if their identifications were flawed, and using prior inconsistent statements to impeach. She also presented two witnesses on behalf of defendant in an attempt to show that the police mishandled evidence and did not follow other potential leads, and to demonstrate that the prosecution's main identification witness was not credible. In addition, Ms. Pessolano raised appropriate objections, sought a mistrial on the grounds that the jury was exposed to prejudicial material, and presented requested jury charges to the court. Finally, Ms. Pessolano presented a summation in which she argued, in an attempt to create reasonable doubt, that there were several major deficiencies in the State's case. In sum, Ms. Pessolano's performance reflected, at the very least, reasonably competent assistance of counsel.

### III.

Further, defendant contends that the jury's verdict finding him guilty of attempted murder, the aggravated assaults, and possession of a handgun with the purpose to use it unlawfully against another under the First through Eleventh Counts was illogical and inconsistent in view of the fact that the jury found him not guilty of possession of a handgun without a permit under the Twelfth Count. In his brief, defendant argues that "since the jury could not possibly have determined that the State had failed to prove the absence of a permit for a firearm on [his] behalf, its acquittal necessarily meant that the jury had concluded that [he] had not possessed the firearm." Defendant, therefore, argues that to the extent that the jury found that he did not have the firearm, it could not convict him of the First through Tenth Counts which were based on his use of a firearm or the Eleventh Count which was based on his possession of a firearm without a permit. We disagree.

Inconsistent verdicts are permitted as long as there is sufficient evidence to permit a rational factfinder to find a defendant's guilt

beyond a reasonable doubt on the charges on which the defendant was convicted. This proposition was first enunciated by the United States Supreme Court in *Dunn v. United States,* 284 *U.S.* 390, 52 *S.Ct.* 189, 76 *L.Ed.* 356 (1932), *overruled on other grounds, Sealfon v. United States,* 332 *U.S.* 575, 68 *S.Ct.* 237, 92 *L.Ed.* 180 (1948), and was reaffirmed by the Court in *United States v. Powell,* 469 *U.S.* 57, 105 *S.Ct.* 471, 83 *L. Ed.*2d 461 (1984). In *United States v. Powell,* the defendant was acquitted of conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute but found guilty of using the telephone to facilitate those crimes. *Id.* at 59–60, 105 *S.Ct.* at 474, 83 *L.Ed.*2d at 465. She appealed, claiming that the verdicts were inconsistent since the crimes of which she was acquitted were necessary to prove the crime of which she was convicted. *Id.* at 60, 105 *S.Ct.* at 474, 83 *L.Ed.*2d at 465. In affirming defendant's conviction, the *Powell* Court stated that inconsistent verdicts would be upheld as long as a reviewing court is satisfied that based on the evidence "the jury could rationally have reached a verdict of guilt beyond a reasonable doubt." *Id.* at 67, 105 *S.Ct.* at 478, 83 *L.Ed.*2d at 470.

The Supreme Court noted that inconsistent verdicts should not be considered a windfall for the prosecution, because "[i]t is equally possible that the jury, convinced of guilt, properly reached its conclusion on the [offense,] and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." *Id.* at 65, 105 *S.Ct.* at 476, 83 *L.Ed.*2d at 468. The Supreme Court continued:

Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded [under the Double Jeopardy Clause] from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.

[*Id.* at 65, 105 *S.Ct.* at 477, 83 *L.Ed.*2d at 468–69.]

The *Powell* Court then explained that it would not review inconsistent verdicts on a theory of jury error because such review would be based on mere speculation "or would require inquiries into the

jury's deliberations that courts generally will not undertake." *Id.* at 66, 105 *S.Ct.* at 477, 83 *L.Ed.*2d at 469.

Recently, in *State v. Grey,* 147 *N.J.* 4, 11, 685 *A.*2d 923 (1996), our Supreme Court adopted the *Dunn/Powell* rule in cases in which the reason for the inconsistent verdict cannot be determined. In *Grey,* the defendant was convicted of conspiracy to commit aggravated arson. *Id.* at 8, 685 *A.*2d 923. He was also found guilty of felony murder, despite having been acquitted of the predicate felony of aggravated arson. *Ibid.* Because he was not convicted of the predicate felony, the defendant argued that his conviction should be set aside since the verdicts were inconsistent. *Ibid.*

In adopting the *Dunn/Powell* rule in cases in which the reason for the inconsistency is not clear, the *Grey* Court reflected that

[t]he *Dunn* and *Powell* decisions are not binding on us but we agree with their logic.... So long as the evidence is sufficient to support a conviction on the substantive offense beyond a reasonable doubt, such verdicts are normally permitted....

....

The *Dunn/Powell* rule [permitting inconsistent verdicts] should apply when the reason for the inconsistent verdicts cannot be determined. In such cases, we should not speculate as to whether the verdicts resulted from jury lenity, compromise, or mistake not adversely affecting the defendant....

[*Id.* at 10–11, 685 *A.*2d 923 (citation omitted).]

However, the *Grey* Court did not apply the rationale of *Dunn/Powell* in the matter before it because it concluded that the reason for the jury's inconsistent verdicts was apparent in that the trial court's confusing instructions led the jury to believe that the defendant could be convicted of felony murder if found guilty of conspiracy to commit aggravated arson, rather than the actual predicate crime of aggravated arson. *Id.* at 14–15, 685 *A.*2d 923. The Court in *Grey,* thus, reversed the defendant's felony murder conviction. *Id.* at 17, 685 *A.*2d 923.

In the past, our courts have ruled that an exception to the inconsistent verdict rule exists where an acquittal on one count necessarily precludes the finding of an element of another offense of which a defendant is convicted; our courts have determined

that such inconsistencies are fatal to the convictions. *See State v. Mangrella,* 214 *N.J.Super.* 437, 441, 519 *A.*2d 926 (App.Div.1986), *certif. denied,* 107 *N.J.* 127, 526 *A.*2d 194 (1987); *State v. Peterson,* 181 *N.J.Super.* 261, 267, 437 *A.*2d 327 (App.Div.1981), *certif. denied,* 89 *N.J.* 413, 446 *A.*2d 144 (1982). The validity of this exception, however, is not clear.

First, in *State v. Burnett,* 245 *N.J.Super.* 99, 112, 584 *A.*2d 268 (App.Div.1990), we expressly rejected the exception as stated in *State v. Mangrella, supra,* and *State v. Peterson, supra:*

To the extent that either *Peterson* or *Mangrella* can be read to hold, as the defendant here contends, that an acquittal on one count of an indictment precludes the finding beyond a reasonable doubt of a common element of the offense charged in another count of the same indictment and requires an acquittal on the latter count, we disagree. Instead we adhere to the principles announced in *Dunn* and *Powell* which we are satisfied have been endorsed by our Supreme Court in *[State v.] Ingenito,* [87 *N.J.* 204, 432 *A.*2d 912 (1981)], *[State v.] Crisantos,* [102 *N.J.* 265, 508 *A.*2d 167 (1986)], and *[State v.] Ragland,* [105 *N.J.* 189, 519 *A.*2d 1361 (1986)].

Moreover, in *State v. Ortiz,* 253 *N.J.Super.* 239, 246, 601 *A.*2d 735 (App.Div.), *certif. denied,* 130 *N.J.* 6, 611 *A.*2d 646 (1992), we noted that even if the defendant were acquitted of certain charges having an element necessary to the charges for which he was convicted, there was still sufficient evidence to support the convictions, and, thus, the convictions must stand. Consequently, in *Ortiz,* we implicitly indicated that the exception to the inconsistent verdict rule was not valid.

More importantly, this exception does not make sense because if acquittals and convictions did not share common elements, or if one was not a predicate for the other, then they would not be truly inconsistent. As such, the exception enunciated in *State v. Peterson, supra,* and *State v. Mangrella, supra,* would swallow the inconsistent verdict rule as enunciated in *United States v. Powell, supra,* and *State v. Grey, supra.* The United State Supreme Court came to the same conclusion in *United States v. Powell, supra,* and used the earlier *Dunn v. United States, supra,* to demonstrate its point. *See United States v. Powell, supra,* 469 *U.S.* at 67–68, 105 *S.Ct.* at 478, 83 *L.Ed.*2d at 470. Similarly our

Supreme Court in *State v. Grey, supra,* intimated that the exception was invalid:

Defendant relies on *State v. Peterson,* 181 *N.J.Super.* 261, 437 *A.*2d 327 (App. Div.1981), *certif. denied,* 89 *N.J.* 413, 446 *A.*2d 144 (1982), which qualified the general rule of acceptance of inconsistent verdicts by stating that unless inconsistent verdicts preclude the establishment of an element of an offense, an acquittal does not affect the validity of a conviction supported by sufficient evidence. However, *Peterson* relied in part on the reasoning of *United States v. Hannah,* 584 *F.*2d 27 (3d Cir.1978), which was later disapproved in *Powell.* In *State v. Burnett,* 245 *N.J.Super.* 99, 584 *A.*2d 268 (App.Div.1990), the court rejected the *Peterson* rule that an acquittal on one offense that precludes the finding of one or more elements of a second offense invalidates a conviction on the second offense because it believed that this Court would apply the doctrine of unreviewability even in such circumstances.

[*State v. Grey, supra,* 147 *N.J.* at 11, 685 *A.*2d 923.]

■ Even if the exception were valid, here the acquittal of defendant by the jury on the charge of possession of a handgun without a permit under the Twelfth Count did not necessarily vitiate an element of the charges in the other eleven counts. Despite defendant's contention that the jury could not have possibly determined that the prosecution failed to prove the absence of permit for the firearm, the jury could rationally have made such a determination. As the trial court made clear in its jury instructions, the jury did not have to accept the statutory presumption in favor of the State that defendant did not have such a permit. Indeed, in light of the trial court's instruction that the State had to prove each element beyond a reasonable doubt and the State's failure to present any evidence showing that defendant did not have a permit, the jury could have rejected the presumption and concluded that the State failed to prove that element beyond a reasonable doubt, thus resulting in defendant's acquittal on the Twelfth Count. If that were the jury's finding, then the exception would not apply because failure to have a permit was not an element of the other eleven charges. In other words, if the jury did find that the State failed to prove that defendant did not have a permit, then the verdicts plainly were not inconsistent because the permit requirement in the Twelfth Count did not exist in the other eleven charges. *Cf. State v. Ortiz, supra,* 253 *N.J.Super.* at

245–46, 601 A.2d 735 (finding that the jury could have determined that an element in the crimes for which the defendant was acquitted, and which was not an element in the crimes for which defendant was convicted, had not been proven beyond a reasonable doubt).

■ Moreover, even if the verdicts are inconsistent, the reason for their inconsistency is not clear. For instance, defendant could have been acquitted of the charge in the Twelfth Count because the jury determined that the State did not prove that he did not have a permit beyond a reasonable doubt (in which case the verdicts were not inconsistent) or it could have found that defendant did not knowingly possess a firearm. Yet, under *State v. Grey, supra,* 147 *N.J.* at 10–12, 685 A.2d 923, when the reason for inconsistent verdicts is not clear from the record, such verdicts must be upheld if there is sufficient evidence to sustain a conviction beyond a reasonable doubt on the offenses for which a defendant was actually convicted. Here, there was sufficient evidence presented in the State's case, particularly through the eyewitness testimony of two of defendant's victims, to find defendant guilty beyond a reasonable doubt of attempted murder, the aggravated assaults, and possession of a weapon for an unlawful purpose.

Consequently, we find that defendant's convictions on the First through Eleventh Counts do not warrant reversal due to defendant's acquittal on the Twelfth Count.

## IV.

Accordingly, the judgment of conviction and order for commitment under review are affirmed.