751 A.2d 151 (2000)
331 N.J. Super. 110
STATE of New Jersey, Plaintiff-Respondent,
v.
William Wesley SELLARS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 28, 2000.
Decided May 26, 2000.
*152 Ivelisse Torres, Public Defender, attorney for defendant-appellant (Arthur J. Owens, Designated Counsel, on the brief).
John J. Farmer, Jr., Attorney General, attorney for plaintiff-respondent (Jordana Jakubovic, Deputy Attorney General, of counsel and on the brief).
Before Judges SKILLMAN, D'ANNUNZIO and NEWMAN.
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
Defendant was tried in absentia under Bergen County Indictment No. S-1327-93. He was convicted of possession of five ounces or more of cocaine with intent to distribute it and possession of a handgun without a permit. The court sentenced defendant to an extended term of thirty years' imprisonment with ten years of parole ineligibility for the drug offense and to a concurrent four-year prison term for the gun offense.
On direct appeal to this court we addressed, in an unreported opinion, defendant's contention that he had been wrongfully tried in absentia. State v. Sellars, No. A-5494-95T4 (App.Div. Apr. 27, 1998) (Sellars I). We summarize the facts in the record at that time.
Sellars, a North Carolina resident, was released on bail pending trial. He appeared and was tried in November 1995. A mistrial was declared, owing to discovery problems. Defendant did not attend a January 1996 status conference, having been told by counsel that his attendance was unnecessary. Defendant had been advised previously by the judge in open court, however, that failure to appear for a scheduled trial on any subsequent trial date would present cause for bail forfeiture, arrest, and for proceeding with the trial in defendant's absence.
Although the record does not disclose whether a trial date was fixed at the January 1996 status conference, it appears that defense counsel and the State were aware that the trial was listed for March 11, 1996, and then placed on the trial judge's calendar for March 12.
The record discloses that on March 12, the trial judge, apparently just informed by counsel that defendant was not present, initiated a telephone call to defendant, on the record, in the presence of his counsel and the assistant prosecutor. No oaths were administered. Among other things, the judge sought to explore defendant's contention that he had just learned of the trial date and needed "like a week ahead of time" to arrange to come up for the trial. Defense counsel had represented that although she wrote to defendant earlier to advise of the trial date, she could not reach him at the telephone number maintained for defendant in her file. Defendant explained that he had received no letter, that the telephone number used by his counsel had been changed two years earlier, but *153 that his current number was the same as it was before the November 1995 trial (when counsel was evidently able to contact him in timely fashion). Counsel said the new number "wasn't in the computer," and that she was told by "information ... as of last night" (i.e., March 11) that a number for "Sellers" [sic] at defendant's address was unlisted and could not be given out.
It is not clear how the correct number was provided for initiation of the March 12 telephone call by the trial judge. However, defendant was informed that he was expected to be in court, ready for trial at 9:00 a.m. on the following day, March 13, or the trial would proceed in his absence. The judge suggested that defendant could waive his presence at jury selection, thus giving him one extra day to come to New Jersey. Although conveying a general sense of practical inconvenience, defendant expressed no definitive reason why he could not possibly be in New Jersey on the following day. He expressly disavowed any waiver of his right to be present at jury selection.
Both counsel then proceeded to the assignment judge, who denied defense counsel's request for an adjournment because the defendant was supposed to be on call, there was still enough time for the defendant to travel from North Carolina to New Jersey, the trial judge had advised the defendant that trial would commence on March 13 at 9:00 a.m. during the above referenced telephone proceeding, and it was a 1993 indictment.
Defense counsel represented to the assignment judge that after the mistrial, her client was kept on call, but that "it was up to me to notify him of the trial date and yours truly goofed." She also said that although defendant was told by the trial judge to appear and that the trial would commence on March 13, he
said he could not come up and he would be glad to come up on another day. He had no, no money. Because he didn't have time to gather his resources he didn't have any means of transportation.
Jury selection began on [Wednesday], March 13. The trial was concluded on [Friday], March 15. Defendant did not appear at any time during the trial. Defendant, however, did appear on Monday, March 18. At that time, the court continued defendant's bail status and established a sentencing date. Defendant appeared for sentencing.
Defense counsel did not move under R. 3:20-1 for a new trial. This is significant because R. 3:20-2 provides in part: "A motion for a new trial based on a claim that the defendant did not waive his or her appearance for trial shall be made prior to sentencing."
In Sellars I, defendant contended that the court erred in trying him in absentia. He also contended that his "trial counsel's ineffective assistance resulted in his being tried in absentia." In light of these contentions, we made this observation:
Here, however there were factors asserted which, if factually explored under oath, either before trial or upon timely motion for new trial under R. 3:20-2, might have demonstrated that: (a) defendant did not receive a letter or call from counsel informing him of the new trial date until, literally, the eve of trial; (b) that counsel did in fact "goof," as she asserted, by failing to ascertain defendant's correct phone number which was apparently capable of discovery, and by waiting until the last minute to reestablish contact with the defendant; (c) that although defendant had actual notice from the judge of the new trial date in time for him physically to reach the New Jersey court by car, air, train or bus, he did not, as represented by counsel, have the money or ability to do so on such short notice. Those facts were not established before the assignment judge, nor in the brief telephonic proceeding conducted by the trial judge. The issues ought to have been more thoroughly explored.
[Sellars I (slip op. at 5-6).] *154 We also noted that trial counsel's failure to move for a new trial prior to sentencing could constitute ineffective assistance, especially in light of R. 3:20-2.
Although we affirmed the judgment, "[a]s no R. 3:20-2 motion was made," we directed "that a R. 3:22 post-conviction relief evidential proceeding be conducted in which the factual issues above referenced shall be explored." We also directed the motion judge to
determine whether the facts ... respecting time of notice, and defendant's inability to travel on short notice are sufficient to render justifiable defendant's non-appearance for trial ... despite the trial judge's telephonic notification on March 12. If so, there could have been no proper waiver. If there was no effective waiver under R. 3:16(b)(1), then counsel's failure to move under R. 3:20-2 would indeed satisfy both Strickland-Fritz prongs, as the non-waiver of [the] right to be present at trial was not remedied.
[Sellars I (slip op. at 8).]
The hearing took place on September 11, 1998. Defendant and his trial counsel were the only witnesses.
Trial counsel testified that defendant had always appeared in court when he was required to appear. She noted that defendant was present for the November 1995 trial, which ended in a mistrial. Thereafter, because defendant lived in North Carolina, his appearance for a January 2, 1996 status conference was excused. At the status conference, the case was scheduled for trial during the week of March 11, 1996, March 11 being the calendar-call date. The testimony established that defendant's presence was not required on March 11.
Trial counsel then testified:
Q Between January 2nd and March 11th or 12th did you speak with the defendant?
A Probably.
Q Probably.
A Yes. And I know I wrote him a letter.
Q You recall giving him a phone call?
A Nothe called me.
Q He called you. When did he call you?
A I don't know. I know that I spoke to him a couple of times in that interim.
Q You're sure that the interim would be between January 2nd and March 12th.
A Uh-huh. I spoke to him at least twice in between court dates.
Q Well getting
MR. NICHOLSON: One moment, Your Honor.
Q Well, didn't you telldo you recall telling Judge Moses on March the 12th later, I suppose later in the day, that, No. 1, the defendant did not come to court and you said January 3rd
A Uh-huh.
Q and it was up to me to notify him of the trial date and yours truly goofed?
A Yes.
Q Do you recall telling
A Oh, yes.
Q Judge Moses?
A Yes, I did.
Q And then after that saying I didn't?
A I said to the defendant, stand by. That was my recollection of telling him.
Q Getting to what you said to Judge Moses.
A Right.
Q You do recall telling Judge Moses that it was up to you to notify him, the defendant, of the trial date and yours truly goofed.
A Uh-huh. Yes.
Q And do you recall after that statement to Judge Moses saying, I didn't? *155 A Didn't notify him.
Q Well
A Right. I didn't say come in on this day. That I did not do.
Q So you didn't notify him between January 2nd and March 12th.
A I told him there would be a court date and to stand by. I did not tell him to come in. I told him to stand by.
Q Did you notify him, however, of the court date?
THE COURT: Of March 11th.
Q Of March 11th.
A Yes. Yes.
Q You did notify him.
A And I told him to stand by.
Q Then why did you tell Judge Moses on March the 12th that you didn't notify him of the trial? Perhaps you need
A I didn't tell him to come in. That'sI didn't tell him to come in.
Q You did not tell him to come in.
A Right. I didn't. I told him to stand by.
Q Was there a reason you would tell him therefore that there was a trial date and then tell him that he didn't have to come in?
A Sure. I thought a very good reason. The case had been adjourned a number of times. Mr. Sellars complained that he was spending a great deal of money coming up and down from North Carolina. He flew in, as I recall, most of the time because he didn't own a car.
And heit was getting very expensive because he would come in for one day and then have to leave the same day. So I said, well, just, you know, I know this is an inconvenience. The court said, you know, they would put you on call. So stand by.
Q All right. Now, when did you find out about the March 11th trial date?
A Probably in January.
Q All right. After you found out about the March 11th trial date did you notify the defendant?
A That there was going to be a trial date and that it probably was going to be the same problem we always encountered and to stand by.
Q But after you told him to stand by
A Uh-huh.
Q did there come a time when you gave him the actual date of March 11th?
A Yes. The same time, yeah.
Q You told him the date would be March 11th.
A I would think, yeah, because he hadI had to prove to Judge Moses that I had complied with thethat the Hudson requirements were complied with. And I don't have my file anymore, by my recollection is that Judge Moses said, What did you do to comply with Hudson. I took out a copy of a letter and I said, But, Judge, I goofed. I told him to stand by. Don't blame him for this. I told him to stand by.
Q Well, perhaps you are clear or perhaps I'm not understanding, aside from telling him to stand by, did you tell him of the actual date?
A Yes.
Q And did you tell him to be in court on that date?
A No, I did not. I told him the actual date and I told him not to be in court on that date.
Trial counsel also testified that defendant was on probation in his home state of North Carolina. Consequently, defendant had to arrange for permission from his probation officer each time he left North Carolina.
Trial counsel testified that she had assumed that defendant could come to New Jersey on one or two days' notice. However, when she spoke to defendant on March 12, he said he needed a week because *156 he needed his next paycheck for airfare, lodging and other expenses.
Defendant testified that he needed more than his probation officer's oral permission to leave North Carolina. He also needed a travel document signed by the officer and approved by a supervisor. He was able to communicate with his probation officer the morning of March 13. Defendant also testified that he needed money for lodging and travel and had to arrange permission to be absent from his job. Additionally, he needed the paycheck he was to receive on March 13.
The trial court found that defendant knew he was "on call" and that he should have made plans to be able to come to New Jersey when called. The court was not satisfied, therefore, that the reasons defendant gavelack of money, probation permission, excused absence from work justified defendant's failure to appear on March 13.
The Sixth Amendment to the United States Constitution and Article I, paragraph 10 of the New Jersey Constitution guarantee a criminal defendant the right to be confronted with the witnesses against him. State v. Hudson, 119 N.J. 165, 171, 574 A.2d 434 (1990). Encompassed within this guarantee is the right of the defendant to be present in the courtroom at every stage of the trial. Id. at 171-72, 574 A.2d 434. A defendant's presence at trial is also important for Fourteenth Amendment due process purposes because the right "is a condition of due process to the extent that a fair and just hearing would be thwarted by [the defendant's] absence[.]" State v. Ellis, 299 N.J.Super. 440, 447, 691 A.2d 403 (App. Div.) (quoting Snyder v. Massachusetts, 291 U.S. 97, 107-08, 54 S.Ct. 330, 333, 78 L.Ed. 674, 679 (1934), overruled on other grounds by Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)), certif. denied, 151 N.J. 74, 697 A.2d 546 (1997).
Nonetheless, to prevent the disruption of crowded court calendars by defendants who deliberately absent themselves from trial, the New Jersey Supreme Court has concluded that "a defendant's inexcusable absence from trial, under circumstances demonstrating knowledge of the time and place of trial, the right to be present, and that the trial may proceed if defendant is absent, constitutes a sufficient basis for a trial court's decision to proceed" in defendant's absence. Hudson, supra, 119 N.J. at 183, 574 A.2d 434.
These principles are codified in R. 3:16(b), which provides that a court may find that a defendant has waived his or her right to be present at trial "either from (a) the defendant's express written or oral waiver placed on the record, or (b) the defendant's conduct evidencing a knowing, voluntary, and unjustified absence after (1) the defendant has received actual notice in court of the trial date, or (2) trial has commenced in defendant's presence."
In State v. Finklea, 147 N.J. 211, 686 A.2d 322 (1996), cert. denied, 522 U.S. 837, 118 S.Ct. 110, 139 L.Ed.2d 63 (1997), the New Jersey Supreme Court applied R. 3:16(b) and upheld a conviction based on a trial in absentia. There, defendant failed to appear for trial on the originally scheduled trial date. The trial court adjourned the trial twice to afford defense counsel an opportunity to produce defendant. Id. at 214, 686 A.2d 322. The trial was held on the second adjourned date, despite defendant's continued absence. Ibid. Defendant argued that he could not be tried in absentia because he had not received notice of the adjourned trial date. The Supreme Court rejected the argument.
The Court in Finklea also refused to apply Crosby v. United States, 506 U.S. 255, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993), which involved application of Federal Rule of Criminal Procedure 43, the federal analogue to R. 3:16(b). There, the United States Supreme Court held that Fed. R.Crim.P. 43 does not authorize trial in absentia of a defendant who is not present *157 when the trial begins. Crosby, supra, 506 U.S. at 262, 113 S.Ct. at 753, 122 L.Ed.2d at 33. Unlike R. 3:16(b), Fed.R.Crim.P. 43 by its terms does not include authorization for a trial in absentia under those circumstances. Thus, the Court in Finklea distinguished Crosby on that ground. 147 N.J. at 221-22, 686 A.2d 322.
R. 3:16(b) authorizes trial in absentia of a defendant who fails to appear for trial under specified circumstances. The rule utilizes "waiver" as a mechanism to achieve the result. It permits an inference of a waiver of the right to be present based on certain facts. At the risk of being redundant, we restate the relevant provisions of the rule:
A waiver may be found ... from ... (b) the defendant's conduct evidencing a knowing, voluntary, and unjustified absence after (1) the defendant has received actual notice in court of the trial date....
[R. 3:16(b).]
The inference of a waiver is permissive, not mandatory. We are persuaded that the facts in the present case did not justify the inference. Defendant had appeared when required on all previous occasions, including his November 1995 aborted trial. The court excused defendant's appearance for the January 2, 1996 status conference. The record establishes that defendant knew that his case was listed for the March 11, 1996 calendar call and that he was on "stand by" status. Defendant was aware that cases listed for a calendar call frequently are not reached for trial.
It appears from the record that the March 11 call was the first time defendant had been on "stand by" status. There is nothing in the record to suggest that defendant knew that "stand by" meant that he had to come to New Jersey for trial on twenty-four hours notice.[1] We perceive that lack of knowledge to be a major flaw in the State's position. See Hudson, supra, 119 N.J. at 182, 574 A.2d 434 (stating that adequate notice is essential to a knowing waiver of the right to attend trial).
Additionally, defendant's reasons for delaying his journey do not strain credulity and arguably were valid. He needed travel money and, therefore, had to wait for his March 13 paycheck. Also, he had to clear his absence with his employer and his probation officer. These reasons for delay would have had little weight if defendant knew that he would receive only a few hours' notice to travel to New Jersey.
Moreover, during his telephone conversation with the judge on March 12, defendant refused to waive his right to be present for jury selection. This refusal was consistent with defendant's history of being present for all unexcused prior court proceedings.
Finally, we note that defendant did appear on Monday, March 18. At that time the court continued defendant's bail status and ordered him to appear for sentencing. We infer that the court did not believe that defendant would not appear for sentencing or otherwise posed a serious risk of flight. Those facts would have been significant had counsel made a pre-sentencing motion for a new trial under R. 3:20-1 and -2.
A defendant's right to be present at his trial is a significant right. See Illinois v. Allen, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353, 356 (1970); see also Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884). It is as fundamental as the right to notice of the charge, the right to counsel, and the right to an opportunity to prepare a defense.[2] The *158 right to be present should not be impaired as a form of punishment for disruption of the court's calendar or in the interest of moving old cases. Implementation of R. 3:16(b) must be done carefully, in strict adherence to its terms and with sensitivity to the importance of the right being denied.
We conclude that the record precluded an inference of waiver. We base that conclusion on the absence of evidence to establish that defendant knew that his presence would be required on twenty-four hours' notice; the reasonableness of the reasons defendant gave for not being able to comply with the notice he received; defendant's history of appearing in court when required to do so; and defendant's rejection of the trial judge's invitation to waive the right to be present at jury selection. We also conclude that defendant's trial counsel was ineffective in failing to move for a new trial prior to sentencing, as required in R. 3:20-2.
The judgment of conviction is reversed and the case is remanded for a new trial.
NOTES
[1] Assuming an eight-hour automobile trip from North Carolina to New Jersey, the advance notice was no more than sixteen hours.
[2] In Crosby, the United States Supreme Court noted with apparent approval a commentator's observation that "the notion that trial may be commenced in absentia still seems to shock most lawyers." Crosby, supra, 506 U.S. at 261-62, 113 S.Ct. at 752, 122 L.Ed.2d at 32 (quoting Starkey, Trial in Absentia, 54 N.Y.St. B.J. 30, 34, n. 28 (1983)).