755 A.2d 1249

STATE OF NEW JERSEY PLAINTIFF–RESPONDENT, v. CHRISTOPHER ROBERTSON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted July 31, 2000—Decided August 8, 2000.

---

500

Before Judges COLLESTER and ARNOLD.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Alan I. Smith*, Designated Counsel, on the brief).

*Donald Campolo*, Assistant Attorney General, Acting Essex County Prosecutor, attorney for respondent (*Maryann K. Lynch*, Special Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

ARNOLD, J.A.D.

Defendant Christopher Robertson appeals the denial of his motion to suppress evidence seized during the warrantless search

of a motor vehicle which the police stopped for speeding on the New Jersey Turnpike. We reverse and remand for a new suppression hearing because defendant was not present at the hearing, did not receive actual notice in court of the date of the hearing, and the waiver of his presence by counsel was ineffective.

The material facts are as follows. A substantial quantity of cocaine was seized during a warrantless search of a motor vehicle following a stop for speeding and weaving from lane to lane on the New Jersey Turnpike. A motion to suppress evidence was originally scheduled for August 9, 1996. The three defendants who were the occupants of the motor vehicle and their lawyers were present. The New Jersey State Trooper who made the motor vehicle stop and seized the evidence failed to appear so the motion was adjourned [1]. The motion judge told counsel and the defendants to come back on August 15, 1996. Apparently, sometime before August 15, 1996, the motion was rescheduled for August 29, 1996 because the Trooper and two of the defense attorneys were unavailable on August 15th. They were notified, by telephone, of the August 29th date. Counsel for defendant wrote to him informing him that the hearing was scheduled for August 29, 1996.

On August 29, 1996, the Trooper was present. Neither defendant nor his two co-defendants were present. One defense attorney, Mr. DeBlis, was also absent apparently because he had not been notified. Initially, it appears that the trial court believed that all defendants and defense counsel had been given notice. The following colloquy took place at the beginning of suppression hearing.

THE COURT: Matter of State versus Dedrick Robertson and Chris Robertson, et al, 96-1-49. Counsel note your appearance please.

MS. ROTHSTEIN: Nancy Rothstein on behalf of the State.

MR. WHITE: Louis White for Dedrick Robertson.

---

[1] The failure of the Trooper to appear was the result of the failure to deliver a subpoena to him so that he did not receive actual notice of the hearing until the morning of August 9, 1996. At that time, he "was babysitting [his] three-month-old baby" and could not come to court because his wife was not home.

MR. CASALE: Mike Casale on behalf of defendant Chris Robertson.

THE COURT: *For the record, defense attorney for Judith Anderson is not here, nor is his client. Both had notice of this date for the motion to suppress.*

*Beyond that, Mr. Christopher Robertson is not here and Dedrick Robertson are not here. Both again had notice of the motion to suppress.*

*Counsel, on behalf of Christopher Robertson and Dedrick Robertson, do you waive their appearances for the purposes of proceeding further?*

MR. CASALE: Yes, your Honor.

MR. WHITE: Yes, Judge.

THE COURT: All right. All right, is the State ready to proceed?

MS. ROTHSTEIN: Yes, your Honor.

THE COURT: All right, let's call your witness.

MS. ROTHSTEIN: The State calls Trooper Castellani to the stand.

[Emphasis added.]

Later in the suppression hearing the issue of notice was again discussed. The following colloquy took place:

MR. CASALE: [counsel for defendant]

Can I address the legal point concerning—I know the Court will be briefed why he wasn't here last time, as I understand it, the trooper told somebody, correct me if I'm mistaken, it's difficult to hear with the noise, that he told somebody that Thursday morning from the Essex County Prosecutor's Office at 9 a.m. that he wasn't going to show up.

My problem, if that's the case, in other words, if there was a communication from the trooper to the Essex County Prosecutor's Office at 9 a.m. on Thursday, why wasn't the Court advised and counsel advised at 9:30, ten o'clock to avoid us coming at 1:30, hanging around till 4:30?

I know obviously the Prosecutor wasn't told because he was here waiting along with us. So among all the other reasons, we want to add that for what it's worth as a basis for granting the motion.

MS. ROTHSTEIN: [Prosecutor]

Your honor, can I respond to that briefly?

THE COURT: Yes.

MS. ROTHSTEIN:

I think I have a little bit of a misscommunication about dates because the two weeks ago date is the date the trooper was testifying to, that was the date when we did contact everybody in the morning to schedule for today to prevent them from coming the second we spoke to him. Now I know because I personally made the phone calls.

THE COURT:

Look at your records, be prepared to tell me when I come back out.

Counsel, my clerk just advised me, to throw this thing in here, my clerk advised me Mr. DeBlis [counsel for defendant Anderson] has advised him he had no idea anything was on for today.

My recollection is that Mr. DeBlis was standing there along with you and the co-defendants and that they were all aware that today was going to be the date.

MR. CASALE:

Wait a second, in fairness to him, what happened we were given—I think we were here apparently on the 9th, we were told to come on Thursday, as I recall the Prosecutor took a day off but to accommodate us, he will be here. We were to be back the following Thursday because the Court was going to be transferred to Hudson.

Then what happened, I got a phone call in the interim saying it was changed till today. That's all I can advise the Court from my knowledge.

MS. ROTHSTEIN:

That was from me, you had me call.

THE COURT:

Did you speak to Mr. DeBlis?

MS. ROTHSTEIN:

I spoke to his secretary and we planned this date around him because he was on vacation last week and I spoke to the secretary.

MR. WHITE: [Counsel for defendant Dedric Robertson]

I think I have sequence of dates. We were here on the 9th all day, the trooper didn't show up. On the 15th was the day that the trooper indicated in the morning he couldn't come, that was the day Miss Rothstein called everybody, was put off.

MR. CASALE: Okay.

MR. WHITE:

The 9th is the day we have to find out why he wasn't here, it's a different question.

THE COURT:

All right.

(Recess is taken)

At the end of the suppression hearing, the motion judge again raised the issue of notice to defendants. The following colloquy then took place:

(BY THE COURT) I wasn't aware of the circumstances, I thought he (the absent defense counsel) had been given notice. Counsel, each in your situation notified your clients to be here, is that correct?

(BY DEFENSE COUNSEL for Christopher Robertson) Yes, Judge. As an officer of the court, I can advise the court that *I don't know whether or not we had any verbal discussions but the letter was sent out August 15th, which, of course, had the return date advising him of the new date was Thursday, August 29th at 1:30 p.m.*

(BY THE COURT) A letter sent out?

(DEFENSE COUNSEL for Christopher Robertson) By my office to Mr. Chris Robertson.

(CO–DEFENDANT'S COUNSEL) I hate to admit this. Judge, but I didn't send my client a letter. I have to say that I didn't. I should have but I did not.

(THE COURT) Sending a letter is one thing, did you notify your client?

(CO–DEFENDANT'S COUNSEL) No. I didn't notify him to be here. That's my fault but by the same token, I know they travel together, the three people travel together.

* * *

(BY THE COURT) Now, the problem is were they properly noticed for this hearing. *I wish I had known at the beginning of this hearing the state of the notice. I had understood they had received notice form the last time to be here for this time and apparently I'm wrong.*

(BY THE COURT) Now, Christopher Robertson is obviously I think by what you said, counsel, has been on notice. I don't know about Dedric Robertson ... *So you may have to have to have this hearing again, give each other as to all but Christopher Robertson, the right to be present for that hearing.*

[emphasis added]

The only witness at the motion to suppress hearing was the New Jersey State Trooper who stopped the motor vehicle in which defendant Christopher Robertson was a passenger. We discuss his testimony in detail because it is important in determining whether the motion could be heard *in absentia.* The Trooper testified as follows.

He saw the vehicle swerving between the center and left lanes and traveling sixty miles per hour. The motor vehicle did not stop immediately after he activated his overhead lights, but did stop after he activated the siren. As the driver began to stop the vehicle, he saw the right front passenger, later identified as co-defendant Judith Anderson, bend down several times. When he approached the passenger side of the vehicle, he saw Anderson place her hands on the dash board. As she did so, he saw the vehicle's registration in her hand and took it away from her. The vehicle was registered to a John Wiley.

The Trooper testified that he then asked the driver, co-defendant Dedric Robertson, for his driver's license. Robertson told

him that he left his license at home and had no other identification with him. Robertson appeared to be nervous. The Trooper then asked Anderson and defendant, who was a passenger in the back seat, if either of them had a driver's license or other identification with them. Both responded in the negative.

The Trooper testified that he then asked the driver Dedric Robertson to exit the vehicle and meet him behind the vehicle. Dedric Robertson complied with the Trooper's request. He first stated that he did have a driver's license, but later admitted that his license had been suspended. He told the Trooper that the owner of the vehicle was John Anderson, a name which differed from that on the registration. After conducting a pat-down search for weapons, the Trooper asked Dedric Robertson to sit on the guard rail.

The Trooper then again approached the passenger side of the vehicle. He asked Anderson to exit the vehicle and meet him behind the vehicle. He testified that he intended to question her separately regarding her knowledge as to the ownership of the vehicle and to ascertain whether Dedric Robertson had given him correct information.

According to the Trooper's testimony when Anderson exited the vehicle, she bent over and started pulling her sweatshirt down over her bicycle shorts. The Trooper testified that he saw an object in the waistband and groin area of Anderson's shorts. He also noticed that Dedric Robertson, who was sitting on the guard rail, and defendant were both staring at him and Anderson. According to his testimony, he feared that the object in Anderson's pants was a weapon, and in order to hide his observations from Robertson until assisting Troopers arrived, he instructed Anderson to keep her hands away from her waistband and have a seat in the back of the police car. The Trooper then entered the police car and called for assistance via the police radio.

The Trooper then asked Anderson if she had anything in her shorts to which she replied, "no." With his hand on his weapon, he informed her that he observed a bulge in her shorts which he

believed to be a weapon and that he would have to pat her down. She began to cry and stated "it's not mine" and started reaching into her shorts. She also stated that it was not a weapon. As she reached into her shorts, the Trooper drew his weapon. Anderson pulled a white plastic bag from her shorts which she threw to the floor of the car.

The Trooper then checked Anderson's waistband for weapons and instructed her to sit back and place her hands where he could see them. He then reached over the seat and picked up the bag which Anderson had thrown to the floor. Based upon his training and experience in the field of narcotics, the Trooper, upon touching the bag, determined the contents to be a hard, chunky substance which he believed to be cocaine.

At this point, another Trooper arrived to assist. Fearing that the defendant, who remained in the back seat of the vehicle, might be armed with a weapon, the Trooper handcuffed Anderson and placed her under arrest. The Troopers then placed Dedric Robertson and defendant Christopher Robertson under arrest. Each of the three defendants provided the Trooper with a false name.

At the suppression hearing, the Trooper indicated that, after approaching the vehicle, he believed that the three occupants may have been armed or may have, otherwise, posed a danger to him. The court found the Trooper's testimony to be credible. Specifically, the court stated:

First of all, as you know, I heard the testimony of the trooper in this case. I have observed his demeanor and I've also compared his testimony toward a standard that I would normally apply and that is the standard as to what might expect to hear from somebody who was attempting to lie to the Court.

I don't find the trooper's testimony indicated by that standard or is my general observations that he was lying to the Court. So I accept the trooper's testimony as to the facts in the senario [sic] as given and I find him to be credible.

Following the denial of the motion to suppress evidence, defendant pled guilty to conspiracy to possess cocaine and conspiracy to possess cocaine with intent to distribute, *N.J.S.A.* 2C:5–2 (count one); and possession of cocaine with intent to distribute in a quantity of five ounces or more, *N.J.S.A.* 2C:35–5b(1) (count

three). Pursuant to a plea agreement, the State agreed to dismiss the charges of possession of cocaine, *N.J.S.A.* 2C:35–10(a)(1) and hindering apprehension, *N.J.S.A.* 2C:29–3b. The plea agreement provided that the State would recommend that if a custodial sentence was imposed, it should not exceed ten years with three years of parole ineligibility. The State further agreed that the sentence imposed should run concurrently with the sentence the defendant was then serving in Cumberland County. The plea form expressly executed by defendant provided that "defendant reserves right to appeal denial of suppression motion."

The defendant was sentenced on count three to a term of ten years with three years parole ineligibility. The Court merged defendant's conviction on count one into count three for purposes of sentencing. The sentence imposed was ordered to run concurrently with the Cumberland County sentence. Appropriate fines and penalties were imposed.

Defendant raises the following points on appeal:

POINT I

The Court Erred in Denying Defendant's Motion to Suppress

(A)

The Stop Of The Vehicle Was A "Pretext Stop" Without Any Legal Justification

(B)

Trooper Castellani Lacked The Level Of "Heightened Caution" Needed To Justify The Removal Of The Passenger, Ms. Anderson, From The Vehicle

(C)

The Subsequent Seizure Of The Bag Of Cocaine Should Have Been Suppressed As Being The "Fruit Of The Poisonous Tree"

Point II

The Court Abused Its Discretion By Conducting The Motion To Suppress In The Defendant's Absence (Not Raised Below)

(A)

The Court Abused It's [sic] Discretion By Soliciting And Accepting Defense Counsel's "Waiver" Of Defendant's Presence

(B)

The Record Can Not Support A Finding That The Defendant Received Actual Notice To Appear In Court

Point III

The Court Abused Its Discretion In Imposing The Ten (10) Year Sentence With Three (3) Years of Parole Ineligibility Because It Did Not Weight The Aggravating And Mitigating Factors Which Were Present.

The first issue to be resolved is whether defense counsel's waiver of defendant's presence at the motion to suppress evidence permitted the motion to be heard *in absentia*. To resolve that issue, we must first determine the nature of defendant's right to attend the hearing which we conclude depends on the anticipated nature of that hearing.

Here, it must have been evident from the briefs filed by the State and the defense, *R.* 3:5–7(b), that the credibility of the State Trooper would be the primary issue, and that oral testimony was going to be adduced on material issues of fact within the defendant's personal knowledge. Certainly, in these circumstances, the hearing was a critical stage of the proceedings against defendant and his presence would bear a reasonably substantial relation to the fullness of his opportunity to defend against the charges. *See Snyder v. Massachusetts*, 291 *U.S.* 97 54 *S.Ct.* 330, 78 *L.Ed.* 674 (1934). In similar circumstances, almost every court that has examined the issue has concluded that the defendant's constitutional right to confront witnesses under the Sixth Amendment to the United States Constitution and corresponding provisions of state constitutions guarantees defendant the right to be present at the hearing on the motion to suppress evidence. *See* Christopher Bello, Annotation, *Right Of Accused To Be Present At Suppression Hearing Or At Other Hearing Or Conference Between Court and Attorneys Concerning Evidentiary Questions*, 23 *A.L.R.*4th 955 (1983).

The State argues that the holding in *State v. Canty*, 278 *N.J.Super.* 80, 650 *A.*2d 391 (App.Div.1994) compels a contrary conclusion. There the opinion of the court stated:

> An order granting or denying a motion to suppress is fully enforceable notwithstanding the defendant's failure to appear. In appropriate circumstances, "a defendant's knowing, voluntary, and unjustified absence before or after trial has commenced does not prevent trial from proceeding in absentia." *State v. Hudson,* 119 *N.J.* 165, 182, 574 *A.*2d 434 (1990); *R.* 3:16, Under circumstances demonstrating adequate notice, a court may proceed with a motion to suppress and a trial even in the defendant's absence. *State v. Hudson,* 119 *N.J.* at 183, 574 *A.*2d 434. A court's decision on a motion to suppress is thus enforceable whether or not the defendant is present at the hearing because it determines whether he evidence seized may be admitted at the subsequent trial.
>
> [*Id.* at 83–84, 650 *A.*2d 391.]

We disagree. In *Canty*, the defendant escaped from prison while the motion to suppress was pending. Defendant's attorney expressly waived defendant's right to be present. Without explanation and over defense counsel's objection, the Law Division dismissed with prejudice defendant's motion to suppress. Defendant later pled guilty to escape and to possession of cocaine with intent to distribute. Although both federal and state courts have "long declined to review the convictions of escaped criminal defendants" we declined to extend that rule to affirm the dismissal of the motion to suppress evidence because the defendant escaped. Instead, we remanded the matter to the Law Division for a hearing on the defendant's motion to suppress.

■ Accordingly, we hold that pursuant to the confrontation clause of the Sixth Amendment and Article 1, ¶ 10 of the New Jersey Constitution, defendant had a constitutional right to be present at the hearing. *See People v. Anderson*, 16 *N.Y.*2d 282, 266 *N.Y.S.*2d 110, 213 *N.E.*2d 445 (1965) (holding that criminal defendants have a constitutional right to be present at suppression hearing.)

■ Next, we consider whether defense counsel's waiver of defendant's presence at the hearing was effective to permit the hearing to be held *in absentia*. *R.* 3:16(a) is silent on the issue of waiver. It merely states:

(a) Pretrial. The defendant must be present for every scheduled event unless excused by the court for good cause shown.

In contrast, *R.* 3:16(b) deals with the issue of waiver. It reads in relevant part:

(b) At trial or post-conviction proceedings. The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, unless otherwise provided by Rule. Nothing in this Rule, however, shall prevent a defendant from waiving the right to be present at trial. *A waiver may be found either from (a) the defendant's express written or oral waiver placed on the record, or (b) the defendant's conduct evidencing a knowing, voluntary, and unjustified absence after (1) the defendant has received actual notice in court of the trial date, or (2) trial has been commenced in defendant's presence.*

Because the hearing here involved oral testimony on material issues of fact of which defendant had personal knowledge, we hold that the waiver provisions of *R.* 3:16(b) apply and that defense counsel's waiver was ineffective in the absence of conduct on the part of the defendant "evidencing a knowing, voluntary, and unjustified absence after the defendant received actual notice in court of the date of the hearing." [2] Here, defendant was present on August 9, 1996 with his co-defendants. Apparently, defendant was told in court to come back on August 15, 1996. After that, as the record indicates, there was substantial confusion as to the date of the hearing. On August 29th, all three defendants were absent and one defense attorney was absent. Under these circumstances, defendant's unexplained absence cannot be considered a "knowing, voluntary and unjustified waiver." *Redman v. State,* 26 *Md.App.* 241, 337 *A.*2d 441 (1975) (holding that waiver not accomplished by defendant's unexplained absence.)

Accordingly, we remand the matter to the Law Division for a hearing in the presence of defendant on defendant's motion to suppress evidence. We do not address the issues raised by defendant in Point I because a determination of those issues will depend on the resolution of factual issues not addressed in the

---

[2] Such notice can be given at the arraignment/status conference, held pursuant to *R.* 3:9–1(c) where the dates for the hearing of motions are set.

record below. If on rehearing in the presence of defendant the court denies the motion to suppress evidence, the sentence imposed is affirmed as being in accordance with law.

Reversed.