8 A.3d 831 (2010)
417 N.J. Super. 134
STATE of New Jersey, Plaintiff-Respondent,
v.
Donny REEVEY, Defendant-Appellant.
Docket No. A-5316-08T4.
Superior Court of New Jersey, Appellate Division.
Submitted June 9, 2010.
Decided December 13, 2010.
*833 Yvonne Smith Segars, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).
Luis A. Valentin, Monmouth County Prosecutor, attorney for respondent (Mary R. Juliano, Assistant Prosecutor, of counsel; Ms. Juliano and Ian D. Brater, Legal Assistant, on the brief).
Before Judges PAYNE, C.L. MINIMAN and FASCIALE.
The opinion of the court was delivered by
MINIMAN, J.A.D.
Defendant Donny Reevey appeals from the denial of his application for post-conviction relief (PCR) in which he alleged ineffective assistance of trial counsel, who failed to secure defendant's presence in the courtroom during an allegedly critical stage of the proceedings when the judge conducted a hearing to determine whether a material witness intended to appear and testify. We affirm.
Defendant was convicted of first-degree use of a juvenile to commit a crime, contrary to N.J.S.A. 2C:24-9a; first-degree armed robbery, contrary to N.J.S.A. 2C:15-1; second-degree armed burglary, contrary to N.J.S.A. 2C:18-2; third-degree aggravated assault on a police officer, contrary to N.J.S.A. 2C:12-1b(5)(a); and third-degree resisting arrest by using or threatening to use physical force, contrary to N.J.S.A. 2C:29-2a(3).
Defendant was sentenced to a term of twenty years on the first-degree robbery conviction subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2; fifteen concurrent years on the first-degree use of a juvenile conviction; ten concurrent years on the second-degree armed burglary conviction, of which five years would be without parole; eighteen concurrent months on the third-degree aggravated assault conviction, of which nine months would be without parole; and five concurrent years on the third-degree resisting arrest conviction, of which two and one-half years would be without parole.
Defendant appealed, and his counsel raised the following issues for our consideration:
POINT ITHE COURT SHOULD NOT HAVE CONSIDERED SHEMP'S TESTIMONY THAT HE SUFFERED BODILY INJURY IN DETERMINING WHETHER THE JUVENILE COMMITTED SIMPLE ASSAULT DUE TO THE STATE'S FAILURE TO PROVIDE THE INFORMATION THAT SHEMP SUFFERED BODILY INJURY TO THE DEFENSE IN DISCOVERY.
POINT IITHE VERDICT ON THE AGGRAVATED ASSAULT CHARGE WAS AGAINST THE WEIGHT OF THE EVIDENCE (NOT RAISED BELOW).
POINT IIICUMULATIVE ERRORS WARRANT A NEW TRIAL (NOT RAISED BELOW).
POINT IVTHE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING MANIFESTLY EXCESSIVE SENTENCES BASED UPON UNSUPPORTED AGGRAVATING FACTORS *834 AND BY FAILING TO CONSIDER APPLICABLE MITIGATING FACTORS (NOT RAISED BELOW).
We affirmed defendant's conviction and sentence, and on September 11, 2007, our Supreme Court denied defendant's petition for certification. State v. Reevey, No. A-1597-05 (App.Div. July 2, 2007), certif. denied, 192 N.J. 480, 932 A.2d 30 (2007).
The facts relevant to defendant's PCR application and the material witness, Gregory Covington, are extracted from our opinion on direct appeal as follows:
The victim, Gregory Covington, gave the following testimony at trial. On July 24, 2004, at approximately 4:00 a.m., he heard a knock at the front door to his apartment in Keansburg. As he opened the door, he saw an individual wearing a ski mask. He immediately shut the door, locked the deadbolt, and went toward his bedroom. Before Covington could make his way into the bedroom, the apartment door was forced open and he was pushed onto his bed. Covington did not see who entered the apartment. While on his knees, with his hand and chest facing down on the bed and a cover over his head, Covington felt something on "the back of [his] head" and he was told by a "white guy" that "it was a `GAT' which is interpreted as a gun." According to Covington, "the white guy asked for money and drugs" and proceeded to remove Covington's bracelet.
Meanwhile, a neighbor had called the Keansburg police and reported a break-in at Covington's apartment. . . .
Covington testified that after the police arrived at his apartment he removed the cover from over his head and saw the police "on top of" defendant in the living room while the "white guy" sat next to Covington on his bed and codefendant Stevens stood by the dresser.. . . He had known defendant for about two or three months prior to the incident. On cross-examination, Covington admitted that he used to sell drugs from his apartment and that certain individuals whom he "would sell [drugs to] and get high with . . . would just come in."
Within an hour after the incident, Covington went to police headquarters where he submitted a handwritten complaint. He returned home but later went back to police headquarters and provided Detective Gary Kronenberger with a formal statement. According to Covington's statement, three individuals broke into his apartment and a person by the name of "World" (codefendant Stevens) pushed him to the end of his bed while "Donny" (defendant) "went in [Covington's] pockets and took [his] money out." He noted in his statement that a "white guy" told him he "had a GAT to the back of [his] head." He also stated, "[t]hen I seen Donny going into the kitchen and World was in the same room looking in drawers, looking under the bed. Then all of a sudden I hear `freeze, freeze,' then I look up and see Keansburg's finest."
In his statement, Covington mentioned that he had met World twice before, had known Donny for "about a month" and had met the "white guy . . . just one time for about 15 minutes." He told the detective that "World had the black stocking cap, the white guy had a blue do-rag over his face and I'm not sure what Donny had on his face." After completing his formal statement, Covington reviewed the statement, certified that it was truthful, and signed it. [Id. at 3-5.]
Prior to the commencement of trial on June 21, 2005, the judge noted that defendants were not in the courtroom, although *835 all three attorneys were present. The judge stated that he had an application from the prosecutor for two material-witness warrants, one for Gregory Covington and one for Helen Brown. The judge noted that this was a matter that could have been handled in chambers; it was not a critical stage of the proceedings; and defendants' presence was not required. The judge heard from the prosecutor and then asked defense counsel if they wished to be heard. Both defense attorneys said that they had no objection to issuance of material-witness warrants. The judge granted the prosecutor's application and required that the warrants be served immediately and that the witnesses be brought before the court for questioning.
After a recess, defendants were brought to the courtroom at which time it was agreed that there were no pretrial motions that needed to be addressed, although certain issues were discussed. Before the jury was brought up, the judge addressed codefendant Stevens, who had a toothache, and explained that the Sheriffs' Department could not issue any medication to him in the courtroom. If it was still bothering him at lunchtime, the sheriff's officers would take him back to the jail for medication and return him to the courtroom by 1:30 p.m. for the resumption of the trial. At that point, the judge began jury selection. When he was ready to recess for lunch, defendant's counsel indicated that his client also needed to take his antibiotics and pain medication, which he took with every meal. The judge also released defendant to the jail.
At five minutes to three, the judge returned to the bench and advised counsel that defendants had finally been returned from the jail. At that point, there were only thirteen jurors in the box, and both jury panels had been exhausted. After instructing counsel and the sheriff's officers to make certain that such delays not be repeated, the judge observed that both defendants were "downstairs, ready to be brought up. But we have another issue at this point."
Covington was in the courtroom, and the judge needed to address the material-witness warrant. The prosecutor explained that Covington had apparently not been served with the first subpoena, but after speaking with Covington, who wanted a lawyer, the prosecutor was not certain if he would appear the next day. As a result, the prosecutor asked the judge to determine whether Covington needed to be housed by the Prosecutor's Office. Defendant had not been brought to the courtroom.
The judge then placed Covington under oath and questioned him about the subpoena that had been served on him:
Q Mr. Covington, I issued a material witness complaint for you today based on representations made by the Prosecutor's Office of their inability to secure your attendance at this proceeding. In fact, they indicated they had served you with a subpoena to appear on June 20th, 2005, in Superior Court. That's yesterday. And that you were personally served with that subpoena on May 11, 2005, at 3:24 p.m. by Keansburg Det. Wayne Davis, Junior. Were you served with that subpoena?
A I can't remember being served with the subpoena.
Q Have you ever been served with a subpoena by a Keansburg detective?
A I can't recall being served no subpoena. I got served with one today after I was arrested.
Q You weren't arrested. Do you know Det. Wayne Davis?
A Yes, I know Det. Wayne Davis.

*836 Q Did you see Det. Wayne Davis about a month ago at about 3:24 p.m. where he handed you a piece of paper?
A I can't really recall because I see Wayne Davis a lot and I see him and his partner.
Q Does he hand you pieces of paper a lot?
A No, he doesn't.
Q So you don't recall.
THE COURT: Det. Davis is here in the courtroom?
MR. LeMIEUX: Yes, Judge.
THE COURT: We will question him shortly.
MR. LeMIEUX: Yes, Judge.
BY THE COURT:
Q Mr. Covington, you are going to be served if you haven't already, with a notice that you have to be back in court tomorrow to testify in this case. Do you intend to appear if you are served with that notice?
A Yes, sir. If I'm served I do intend to appear because I would have to be served in front of you and I don't want to cause no problems.
Q Where do you live?
A I live at . . . apartment number eight. That's exactly where they picked me up at today.
Q What is your telephone number there?
A I don't have no phone number.
Q Who do you live there with?
A I live by myself, sir.
Q And do you have a job?
A Yes, I work but my job is right now slow.
Q And you are served with a notice. Do you have means of transportation to get here tomorrow?
A Yes, I do.
Q How would you get here?
A I would either catch the bus, get up early or either I catch a car, sir.
Q How about if I arrange to have somebody pick you up tomorrow morning and bring you here so you don't have to pay any money for car fare, etcetera?
A I appreciate that, sir.
At that point, the judge began to examine Covington about whether he would testify consistently with the statements he gave to the police:
Q Okay. Now, the State is asking you to testify as a witness in the case, the alleged victim. And I assume that they wanted you to testify consistent with a statement that you may have given that I don't have a copy of, I don't know what it says. Do you intend to testify and answer the State's questions?
A Yeah, I intend to. And I talked to I guess it's the [p]rosecutor, and I made it clear to him that I can't recollect everything that happened that night due to the fact that it was late at night and it was so long ago and I was drinking, but I'm going to testify to the best of my knowledge.
Q Well, do you realize that if I deem you to be a reluctant witness that I can then have the prosecutor question you about the specific statement that you gave to the police?
A I don't understand that part.
Q Well, you gave a formal written statement to the police?
THE COURT: Is that accurate, Mr. LeMieux?
MR. LeMIEUX: That is correct. He gave a handwritten statement and then he gave a formal written statement.
BY THE COURT:
Q Have you had an opportunity to review those statements?
A Yes, I have.

*837 Q And does that help refresh your recollection as to what you told the police?
A A little bit.
Q If you were asked to testify and you are asked questions about your recollection, they are going to show you that statement and they are going to show you a handwritten statement in the other one. And they're going to expect that you are going to testify consistent with that. Was that the truth when you testified to itstrike thatwhen you gave those statements?
A I can't remember that night, your Honor, what I said and if it was.
Q Even being shown the documents doesn't help refresh your recollection?
A No. If it's possible I could write a statement out now and I can testify to that.
Q How would you write the statement now? You just say you don't remember anything.
A Because I told you that night I was drinking and it was late at night and I was frustrated. It was a lot going on that night.
THE COURT: Seems clear to me that we're going to need a Gross[1] hearing. The only question is do we do it today or do we do it tomorrow?
The judge and the prosecutor then discussed when to schedule the Gross hearing and what action the prosecutor wished the judge to take to ensure Covington's appearance for trial. At the suggestion of the prosecutor, the judge examined Covington further after stating that the question was merely for the purposes of the material-witness issue; if a Gross hearing were required, it would be in defendant's presence. This round of questioning was confined to the material-witness issue. The judge then proceeded to the Gross hearing because Covington was there in court. Before beginning, he asked to have defendants brought to the courtroom. After defendants arrived, the prosecutor asked the judge to address the other material witness, Brown, who was in the prosecutor's office. The judge did so, and the prosecutor participated in the examination of Brown.
The judge prefaced the Gross hearing with the following statement:
Now, based upon the discussion I had with Mr. Covington concerning the material witness complaint and his appearing, it became obvious to me that there is some reluctance on his part to testify in this case and he may or may not testify consistent[ly] with a statement he gave to the police in this matter. In light of that fact, I'm going to, at this time, hold a 104 hearing to determine whether or not he is a reluctant witness and whether or not there is enough evidence to convince me by a preponderance of the evidence that the State would be able to question [Covington] with his prior statement and in fact attempt to utilize that as substantive evidence in this case. That would be consistent with the rule on prior inconsistent statements under [N.J.R.E.] 803(a).
After the judge ruled on the Gross issue, the matter proceeded to trial, and the above-described verdict was returned against defendant. We then affirmed his conviction, and the Supreme Court denied certification.
Defendant filed his PCR petition on April 7, 2008, and a verified amended petition for PCR was filed on November 3, 2008. In support of PCR, defendant verified the following:

*838 a) Defendant-petitioner was denied effective assistance of trial counsel in that:
i. During the pre-trial hearing pursuant to [Gross, supra, 121 N.J. 1, 577 A.2d 806], defense counsel failed to properly cross-examine Mr. Gregory Covington;
ii. Prior to the Gross hearing, defense counsel failed to ensure the presence of defendant-petitioner while the [c]ourt questioned Mr. Covington, thereby denying defendant-petitioner his right to confront the witnesses against him;
iii. After the trial, prior to the closing argument of the prosecutor, defense counsel failed to discuss the issue regarding the juror named Octavia Gadson. Because Ms. Gadson had a conflict with her job, defendant-petitioner was denied a fair trial. Had defendant-petitioner been properly informed by his attorney of the job conflict with Ms. Gadson, he would have objected to her remaining on the jury;
iv. During the sentencing hearing, defense counsel failed to object to the prosecutor's recitation of the various municipalities where defendant-petitioner is alleged to have committed criminal offenses.
b) Defendant-petitioner was denied a fair trial because Mr. Covington was forced to testify against his will.
i. The trial court wrongly found that Mr. Covington was in fear of defendant-petitioner and reluctantly made eye contact with defendant-petitioner during the pre-trial hearing.
The PCR judge denied all relief on January 16, 2009. His decision respecting defendant's absence from the courtroom follows:
At trial, which was initially scheduled on June 20th, 2005, the State's witness, Gregory Covington, failed to appear. Subsequently, a material witness complaint was issued. This [c]ourt questioned Covington regarding his failure to appear when he appeared in court the next day. This [c]ourt then issued Covington a subpoena for his appearance and commenced a Gross hearing to determine the reliability and admissibility of Covington's July 24th, 2004[,] statements to the police. At the conclusion this [c]ourt found Covington's prior statements to be reliable and admissible pursuant to [N.J.R.E. 803(a)].
Again, as I noted in going through the transcript, the defendant was only not in the courtroom for that discussion with Covington about his obligation to appear. It was not during any testimonial phase of the trial, of any Gross hearing or anything else. It was merely to advise him of his obligation, what would happen if he didn't, and to give him a notice for the next day to appear at the Gross hearing or that he had to continue to appear.
When the [c]ourt did conduct the Gross hearing, defendant was in the courtroom, as were both defendants and the attorneys and everyone was present. Nothing occurred outside of their presence by way of any trial testimony or motion testimony in this matter.
. . . .
The defendant argues that his Sixth Amendment rights to effective assistance of counsel were violated for the following reasons. One, defense counsel failed to insure [sic] his presence when the [c]ourt questioned Gregory Covington prior to the Gross hearing. And again, prior to the Gross hearing is correct. There was nothing about the Gross hearing that was discussed with *839 Covington. It was merely his necessity to appear pursuant to a subpoena.
After discussing the standards governing PCR claims of ineffective assistance of counsel, the judge addressed defendant's claim that his counsel was ineffective in failing to secure defendant's presence during the questioning of Covington:
Defendant claims that counsel was ineffective because he failed to secure defendant's presence during the questioning of Gregory Covington regarding his failure to appear under subpoena. "[T]he right of confrontation is not absolute. The right of the accused to be present must be anchored to the reason[] for its existence. The right to meet one's accuser face to face i[s] not guaranteed when presence would be useless[,] or the benefit but a shadow." [State v. Zenquis, 251 N.J.Super. 358, 364, 598 A.2d 245 (App.Div.1991) (citation and internal quotations omitted), aff'd, 131 N.J. 84, 618 A.2d 335 (1993)].
This [c]ourt found that the questioning of Gregory Covington regarding his failure to appear did not constitute a crucial part of the proceeding. The transcript previously cited, page 4, line 10 to page 4, line 12. This [c]ourt questioned Covington regarding his failure to appear to which Covington responded that he did not remember being served. Again, transcript page 21, line 2 to page 2, line 4, transcript one. When asked if he intended to testify at trial, Covington responded that he did and that he would testify to the best of his knowledge. Again, that's transcript page 23, line 4 to page 23, line 11.
He was then served with a subpoena in the courtroom. Transcript page 26, line 23 to page 31, line 12. This [c]ourt believes that the defendant was not entitled to be present during the questioning of Covington as it was not a crucial part of the proceedings. Even if it was considered a crucial part, the defendant has not shown prejudice that resulted from his absence.
Defendant's presence during questioning would have been useless and thus his attendance was not required. The result of the questioning would have been exactly the same regardless of whether defendant was present or not. And therefore defendant's claim that his counsel was ineffective on this point has no merit. There was no opportunity nor should there have been for defense counsel to do any cross[-]examination on that issue of appearance.
Although the defendant frames this issue as one of ineffective assistance of counsel, the Appellate Court has decided that Covington's prior inconsistent statements were properly admitted under N.J.R.E. [803(a)(1)(A)]. See the unpublished appellate opinion at page 10.
Therefore, had the trial counsel objected and demanded the presence of the defendant, the objection most likely would have been overruled and the proceeding would have continued. Therefore the defendant's claim for post conviction relief will not be granted on this issue.
This appeal followed.
Defendant raises the following issue for our consideration:
POINT IDEFENDANT'S CONVICTIONS MUST BE REVERSED DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL, IN THAT COUNSEL FAILED TO OBJECT TO, OR RAISE THE ISSUE OF, DEFENDANT'S ABSENCE IN THE COURTROOM DURING A CRITICAL STAGE OF THE PROCEEDINGS. (PARTIALLY RAISED BELOW).
*840 We review the legal conclusions of a PCR judge de novo. State v. Harris, 181 N.J. 391, 420-21, 859 A.2d 364 (2004) (citing Mickens-Thomas v. Vaughn, 355 F.3d 294, 303 (3d Cir.2004); Hakeem v. Beyer, 990 F.2d 750, 758 (3d Cir.1993)), cert. denied, 545 U.S. 1145, 125 S.Ct. 2973, 162 L.Ed.2d 898 (2005). The same scope of review applies to mixed questions of law and fact. Id. at 420, 859 A.2d 364 (citing McCandless v. Vaughn, 172 F.3d 255, 265 (3d Cir.1999)). We review fact-findings for clear error. Ibid. (citing Burkett v. Fulcomer, 951 F.2d 1431, 1438 (3d Cir.1991), cert. denied, 505 U.S. 1229, 112 S.Ct. 3055, 120 L.Ed.2d 921 (1992)). We accord deference to credibility determinations. Id. at 420-21, 859 A.2d 364 (citing United States v. Igbonwa, 120 F.3d 437, 441 (3d Cir. 1997), cert. denied, 522 U.S. 1119, 118 S.Ct. 1059, 140 L.Ed.2d 121 (1998)).
However, where no evidentiary hearing has been held, we "may exercise de novo review over the factual inferences drawn from the documentary record by the [PCR judge]." Id. at 421, 859 A.2d 364 (citing Zettlemoyer v. Fulcomer, 923 F.2d 284, 291 n. 5 (3d Cir.), cert. denied, 502 U.S. 902, 112 S.Ct. 280, 116 L.Ed.2d 232 (1991)). Thus, it is within our authority "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Ibid. Where no credibility determinations have been made, "we invoke our original jurisdiction in the review of th[e] matter." Ibid. Such a review is appropriate here as there was no evidentiary hearing and no credibility determinations were made.
PCR is governed by Rule 3:22. The Rule specifically describes the grounds that are cognizable for PCR:
(a) Substantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey;
(b) Lack of jurisdiction of the court to impose the judgment rendered upon defendant's conviction;
(c) Imposition of sentence in excess of or otherwise not in accordance with the sentence authorized by law if raised together with other grounds cognizable under paragraph (a), (b), or (d) of this rule. Otherwise, a claim alleging the imposition of sentence in excess of or otherwise not in accordance with the sentence authorized by law shall be filed pursuant to R. 3:21-10(b)(5).
(d) Any ground heretofore available as a basis for collateral attack upon a conviction by habeas corpus or any other common-law or statutory remedy.
[R. 3:22-2.]
The scope of the issues that can be raised under Rule 3:22-2 is limited by other provisions of Rule 3:22. First, PCR "is not . . . a substitute for appeal from conviction or for motion incident to the proceedings in the trial court, and may not be filed while such appellate review or motion is pending." R. 3:22-3.
Second, a ground for relief that was not raised in the conviction proceedings or any appeal from the conviction "is barred from assertion in a proceeding under this rule." R. 3:22-4(a). There are, however, three exceptions to the general rule if
the court on motion or at the hearing finds:
(1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or
(2) that enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice; or

*841 (3) that denial of relief would be contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey.
A ground could not reasonably have been raised in a prior proceeding only if defendant shows that the factual predicate for that ground could not have been discovered earlier through the exercise of reasonable diligence.
[Ibid.[2]]
Issues that could and should have been raised on direct appeal from the defendant's conviction are barred by Rule 3:22-4(a) unless the exceptions to the Rule have been established. See R. 3:22-4(a)(1) to (3). Where the exceptions do not apply, consideration of such issues is properly barred. State v. Murray, 315 N.J.Super. 535, 539-40, 719 A.2d 190 (App.Div.1998), aff'd and remanded, 162 N.J. 240, 744 A.2d 131 (2000); State v. Morales, 120 N.J.Super. 197, 200, 293 A.2d 672 (App. Div.), certif. denied, 62 N.J. 77, 299 A.2d 75 (1972); State v. Odom, 113 N.J.Super. 186, 189, 273 A.2d 379 (App.Div.1971).
Defendant's claim for relief is governed by Rule 3:22-2(a), substantial denial of defendant's constitutional rights. Because the issue raised here could have been raised on direct appeal,[3] defendant must establish that his claim falls within one of the exceptions to Rule 3:22-4(a). Neither the first nor third exception applies here. Thus, defendant must establish "that enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice." R. 3:22-4(a)(2).
Necessarily, we must determine whether defendant had a constitutional right to be present while the judge was examining Covington. If not, there can be no injustice or substantial denial of a constitutional right.[4]
The United States and New Jersey Constitutions guarantee a criminal defendant the right to confront the witnesses against him. Illinois v. Allen, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353, 356 (1970); State v. Ingram, 196 N.J. 23, 45, 951 A.2d 1000 (2008); State v. Luna, 193 N.J. 202, 209, 936 A.2d 957 (2007). Included within that guarantee is a criminal defendant's right to be present in the courtroom during every "critical stage" of the trial. Zenquis, supra, 251 N.J.Super. at 363, 598 A.2d 245. A defendant's right to be present at trial is also protected by the Due Process Clause of the Fourteenth Amendment "to the extent that a defendant's absence would hinder a *842 fair and just hearing." State v. Finklea, 147 N.J. 211, 216, 686 A.2d 322 (1996), cert. denied, 522 U.S. 837, 118 S.Ct. 110, 139 L.Ed.2d 63 (1997); see also Kentucky v. Stincer, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631, 647 (1987); State v. Hudson, 119 N.J. 165, 171, 574 A.2d 434 (1990); State v. Sellars, 331 N.J.Super. 110, 119, 751 A.2d 151 (App.Div.2000). This constitutional right applies to pretrial proceedings. State v. Robertson, 333 N.J.Super. 499, 509, 755 A.2d 1249 (App. Div.2000). In New Jersey, a defendant's right to be present is protected by Rule 3:16(b), which provides in pertinent part: "The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, unless otherwise provided by Rule." See also State v. Dellisanti, 203 N.J. 444, 454, 4 A.3d 531 (2010) ("The right is so vital to the proper and fair functioning of the criminal justice system that it is protected by a specific rule.").
"[T]he requirement of personal presence ... undoubtedly makes it more difficult to lie against someone, particularly if that person is an accused and present at trial." Ohio v. Roberts, 448 U.S. 56, 64 n. 6, 100 S.Ct. 2531, 2538 n. 6, 65 L.Ed.2d 597, 606 n. 6 (1980) (citation and internal quotations omitted), overruled on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Physical presence of the defendant enhances the reliability of the fact-finding process and promotes "society's interest in having the accused and accuser engage in an open and even contest in a public trial." Lee v. Illinois, 476 U.S. 530, 540, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514, 525 (1986). Traditional justifications for a defendant's presence at critical stages of the proceedings are to enable the defendant to communicate with his attorney, assist counsel in the presentation of a defense, assist in cross-examination of witnesses, and influence the jury psychologically by defendant's presence. State v. Morton, 155 N.J. 383, 436, 445, 715 A.2d 228 (1998), cert. denied, 532 U.S. 931, 121 S.Ct. 1380, 149 L.Ed.2d 306 (2001); see also State v. W.A., 184 N.J. 45, 53, 875 A.2d 882 (2005). "`[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.'" Zenquis, supra, 251 N.J.Super. at 364, 598 A.2d 245 (quoting Stincer, supra, 482 U.S. at 745, 107 S.Ct. at 2667, 96 L.Ed.2d at 647).
A defendant's right to be present is not absolute. Luna, supra, 193 N.J. at 210, 936 A.2d 957; State v. Whaley, 168 N.J. 94, 100, 773 A.2d 61 (2001); Finklea, supra, 147 N.J. at 216, 686 A.2d 322. It is evaluated in light of the reason for the right. Morton, supra, 155 N.J. at 436, 445, 715 A.2d 228 (defendant's presence not required when traditional justifications are absent); Zenquis, supra, 251 N.J.Super. at 364, 598 A.2d 245 ("The right of the accused to be present must be anchored to the reason for its existence."); State v. Childs, 204 N.J.Super. 639, 649, 499 A.2d 1041 (App.Div.1985) (defendant's right to be present is not triggered where "[t]he proceeding did not involve the receipt of evidence or the confrontation of witnesses"). "The right to meet one's accuser face to face is not guaranteed `when presence would be useless, or the benefit but a shadow.'" Zenquis, supra, 251 N.J.Super. at 364, 598 A.2d 245 (quoting Snyder v. Massachusetts, 291 U.S. 97, 106-07, 54 S.Ct. 330, 332, 78 L.Ed. 674, 678 (1934), overruled on other grounds by Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)); see also United States v. Gagnon, 470 U.S. 522, 527, 105 S.Ct. 1482, 1484-85, 84 L.Ed.2d *843 486, 490 (1985) (defendants' presence not required where defendants "could have done nothing had they been present at the conference, nor would they have gained anything by attending" (citation and internal quotations omitted)).
In New Jersey, our Supreme Court has "examined whether the absence [from a stage of trial] was prejudicial to the defendant's right to participate in the evidential proceedings and confront the witnesses and evidence against him or to his ability to assist with his own defense." Dellisanti, supra, 203 N.J. at 458-59, 4 A.3d 531 (citations omitted). There is no per se approach to determining prejudice. Id. at 459, 4 A.3d 531. However, "[w]hen the absence deprives a defendant of confrontation rights, prejudice can be readily assessed; when confrontation interests are not in play and participation in one's defense is the issue, prejudice is more critically examined." Ibid. (citations omitted).
In order to determine whether a defendant's presence at particular stages of the trial is critical to its outcome or the fairness of the proceeding, courts must look to the nature of the hearing as a whole. Zenquis, supra, 251 N.J.Super. at 364, 598 A.2d 245. "Critical stages" have been defined as "`anything ... new to the proceeding and in conflict with ... [the] right to be confronted by the witnesses, to be represented by counsel, and to maintain... [the] defense upon the merits.'" State v. Trent, 157 N.J.Super. 231, 241, 384 A.2d 888 (App.Div.1978) (quoting State v. Auld, 2 N.J. 426, 433, 67 A.2d 175 (1949)) (citations omitted), rev'd on other grounds, 79 N.J. 251, 398 A.2d 1271 (1979); see also State v. Scherzer, 301 N.J.Super. 363, 447-48, 694 A.2d 196 (App.Div.) (critical stage includes portion of trial where court receives evidence), certif. denied, 151 N.J. 466, 700 A.2d 878 (1997); State v. Ogburne, 235 N.J.Super. 113, 115, 561 A.2d 667 (App.Div.1989) (defendant may not be "excluded from an in camera hearing conducted under the Rape Shield Law, N.J.S.A. 2C:14-7, to determine the admissibility of evidence of any previous sexual conduct of the alleged victim").
The State urges that a material witness hearing is not a "critical stage" of the criminal proceedings because such hearings are ministerial in nature and are not concerned with evidentiary matters or the guilt or innocence of the defendant, citing People v. Moltrer, 893 P.2d 1331, 1333-34 (Colo.App.1994), cert. denied, No. 94SC676, 1995 Colo. LEXIS 355 (Colo. May 8, 1995); People v. McDonald, 322 Ill.App.3d 244, 255 Ill.Dec. 684, 749 N.E.2d 1066, 1069-71 (2001), appeal denied, 202 Ill.2d 642, 272 Ill.Dec. 349, 787 N.E.2d 164 (2002); Lester v. Commonwealth, 132 S.W.3d 857, 860-62 (Ky.2004), rev'd on other grounds, No. 2007-CA-001676-MR, 2009 WL 637155, 2009 Ky.App. Unpub. LEXIS 343 (Ky.Ct.App. Mar. 13, 2009); People v. Parker, 230 Mich.App. 677, 584 N.W.2d 753, 759 (1998), appeal denied, 459 Mich. 964, 591 N.W.2d 37 (1999); People v. Owens, 235 A.D.2d 268, 653 N.Y.S.2d 107, 108, appeal denied, 90 N.Y.2d 896, 662 N.Y.S.2d 439, 685 N.E.2d 220 (1997); People v. Brown, 195 A.D.2d 967, 600 N.Y.S.2d 593, 594 (N.Y.App.Div.), appeal denied, 82 N.Y.2d 804, 604 N.Y.S.2d 940, 624 N.E.2d 1035 (1993). The rationale of these decisions would only apply here to the examination of Covington respecting his appearance at trial. It is not clear that it would apply to the portion of the judge's examination of Covington that was intended to determine the necessity of a Gross hearing.
We have uncovered no binding cases that address a defendant's right to be present in court under these narrow circumstances. However, in Moltrer, supra, 893 P.2d at 1333, the court rejected *844 the defendant's contention that the material-witness "proceedings `took an unexpected turn'" after a witness expressed concerns about her safety and stated that she could not recall what had transpired on the date in question. The defendant was not present during the hearing and had argued that the court should have required his presence. Ibid. The court concluded that "the referenced events did not transform a ministerial proceeding into a critical stage." Ibid.
Here, the events that transpired outside of defendant's presence are analogous to those in Moltrer. Covington's testimony outside of defendant's presence concerned his obligation to testify at trial and the fact that he could not recollect everything that had occurred on the night in question, which led the judge to conclude that a Gross hearing was required. We also note that defendant was present during the Gross hearing itself and that no substantive testimony was elicited from Covington before defendant returned to the courtroom. Further, during the Gross hearing, counsel for defendant had the opportunity to cross-examine Covington about the very issues raised outside of defendant's presence. Thus, even if defendant had a right to be present during the judge's examination of Covington prior to the Gross hearing, he would not have gained anything by attending. See Gagnon, supra, 470 U.S. at 527, 105 S.Ct. at 1482, 84 L.Ed.2d at 490. There was neither an injustice nor the substantial denial of defendant's rights as his absence did not affect the fairness of the proceeding. See Stincer, supra, 482 U.S. at 745, 107 S.Ct. at 2667, 96 L.Ed.2d at 647.
Affirmed.
NOTES
[1] State v. Gross, 121 N.J. 1, 577 A.2d 806 (1990).
[2] The rule as quoted above varies from the form of the rule considered by the PCR judge because the rule was amended effective February 1, 2010, to define the requirements for establishing that a ground for relief could not reasonably have been raised in a prior proceeding and to add a new subsection (b) applicable to second and subsequent PCR petitions. Because a procedural rule "is in general to be deemed applicable to actions pending on its effective date," Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 120, 299 A.2d 394 (1973) (citations omitted), see also Romagnola v. Gillespie, Inc., 194 N.J. 596, 603, 947 A.2d 646 (2008), we have quoted the version now in effect.
[3] The issue of ineffective assistance of counsel drops out of the equation because counsel could only be ineffective if defendant had a constitutional right to be present. Substantial deprivation of that right alone entitles defendant to relief if enforcement of the bar of Rule 3:22-4(a) would result in fundamental injustice. R. 3:22-4(a)(2).
[4] Although defendant makes a claim of ineffective assistance of counsel, which is usually reserved for PCR, State v. Preciose, 129 N.J. 451, 460, 609 A.2d 1280 (1992), the claim may be adjudicated here based on the record of the proceedings, triggering application of Rule 3:22-4(a).