**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2668-18T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

COBY T. RICHARDSON, a/k/a
COLBY RICHARDSON, and
TIMOTHY RICHARDSON,

     Defendant-Appellant.

_____

Submitted February 12, 2020 – Decided March 8, 2020

Before Judge Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 12-04-1144.

Joseph E. Krakora, Public Defender, attorney for appellant (John Vincent Molitor, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor (Stephen Anton Pogany, Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals from the December 11, 2018 Law Division order denying his first petition for post-conviction relief (PCR) without an evidentiary hearing. On appeal, defendant raises the following single contention for our consideration:

> THIS COURT SHOULD REVERSE THE TRIAL COURT'S DECISION TO DENY DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AN EVIDENTIARY HEARING.

We disagree and affirm for the reasons expressed in Judge John I. Gizzo's comprehensive and well-reasoned written opinion.

We incorporate herein the facts set forth in State v. Richardson, No. A-4021-14 (App. Div. June 23, 2017) (slip op. at 2, 5, 39), certif. denied, 231 N.J. 520 (2017), wherein we affirmed defendant's 2015 convictions following a jury trial, as well as the imposition of an aggregate seventeen-year sentence, with six-and-one-half-years of parole ineligibility, for receiving stolen property, resisting arrest and weapons possession offenses.[1] The convictions stemmed from a July 21, 2011 "9-1-1 call from an unidentified woman, reporting armed men, wearing gloves, in a red vehicle in the area of 600 Irvine Turner Boulevard"

---

[1] Defendant was acquitted of eluding police and possession of hollow point bullets.

in Newark. Id. at 5. The report led to a police pursuit of a vehicle matching the description, and the ultimate apprehension of defendant and his brother, who "fled" from the vehicle "on foot" just prior to the vehicle striking "a parked car and a tree." Ibid.

The two officers who first responded to the police dispatch, Jimmy Rios and Steven Maresca, identified defendant as the driver of the vehicle. A subsequent examination of the vehicle revealed a damaged ignition, and a search uncovered a "handgun, a rifle, a high capacity magazine, and a screwdriver." Id. at 6-7. "Police also recovered gloves, bandanas, cellphones, and a cap at the scene." Id. at 7. A bandana was linked to defendant by DNA evidence, which was challenged by a defense expert forensic scientist.

During the nine-day trial, the State produced "the dispatch officer" and "the 9-1-1 operator," as well as several other police and civilian witnesses, and introduced "various documents including transcripts of the 9-1-1 call and radio dispatches." Ibid. Defendant testified at trial, essentially claiming mistaken identity. We previously recounted his testimony as follows:

> [Defendant] testified he worked as a driver for his brother's roadside assistance company, which responded to service calls for customers of companies such as AAA and All America. On July 21, 2011, at approximately 3 p.m., [his brother] arrived in a company van to take [defendant] to work. [Defendant]

was to start work at 5 p.m., when [his brother's] shift ended. Sometime after 4 p.m., the van overheated so [his brother] took it for repair at a local mechanic shop. While the two waited, they walked to a nearby neighborhood . . . because [defendant] wanted to buy marijuana.

At some point, [his brother] separated from [defendant] because he desired to purchase Percocet. After his transaction was completed, [defendant] emerged from an alleyway and saw police. He became nervous, as he just purchased marijuana, so he ran. A police officer, searching on foot, saw [defendant] hiding behind a bush and arrested him. . . . Also he admitted he tossed the marijuana during the chase and lost his bandana. [Defendant] denied he was driving a red Ford Taurus or that he possessed guns.

[Id. at 7-8.]

His brother, who was also charged and tried jointly with defendant, gave similar testimony.

In his timely PCR petition, defendant certified his "trial attorney was ineffective . . . in failing to consult with [him] regarding trial strategy." Specifically, defendant averred his attorney "fail[ed] to contact the [9-1-1] caller and interview her as to her observations." Defendant asserted "[t]he caller's telephone number was provided, and [he] requested" his attorney to "contact" her "several times . . . but he refused." According to defendant, because the caller never "provide[d] the race of the individuals she saw, and . . . never

mentioned dreadlocks, which would have been a distinguishing feature," if his attorney had contacted her, she "would have exculpated [him]."

Defendant also asserted his attorney "refused" to "cross-examine" Rios on a "critical" discrepancy in his testimony. According to defendant, although Rios stated at trial that "the perpetrator had dreadlocks, . . . he failed to communicate such to dispatch" and "only added dreadlocks into his police report after the fact." Defendant averred "[t]his omission would have illustrated to the jury that the officer was lying about [defendant's] involvement." Defendant made other assertions to support his ineffective assistance of counsel claim (IAC) that are not pertinent to this appeal.

Following oral argument, Judge Gizzo denied defendant's petition. In his December 10, 2018 written decision, the judge reviewed the factual background and procedural history of the case, applied the applicable legal principles, and concluded defendant failed to establish a prima facie case of IAC. The judge found defendant failed to show that either counsel's performance fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 49-53 (1987), or that the outcome would have been different without the purported deficient performance as required under the second prong of the

Strickland/Fritz test. Additionally, in rejecting defendant's request for an evidentiary hearing, the judge concluded defendant failed to present any issues that could not be resolved by reference to the existing record.

In rejecting defendant's claim that trial counsel failed to effectively cross-examine Rios, the judge stated

> the trial record suggests otherwise. During his cross[-]examination of . . . Rios, trial counsel proceeded to ask the detective about the descriptions he provided to dispatch regarding the suspect's identity. The record further reveals that trial counsel questioned . . . Rios not only about the suspect's hair type but also about the suspect's weight, height, dress and race. This line of questioning directly contradicts [d]efendant's claim. The jury not only had the benefit of hearing [d]efendant's trial attorney cross-examine . . . Rios on the identification issues, but they also listened while [his brother's] trial counsel conducted his own cross-examination of . . . Rios on the identification issues.

As to defendant's claim regarding the 9-1-1 caller, the judge explained:

> It seems apparent that trial counsel chose not to call the witness but instead chose to use the State's failure to call the 9-1-1 caller to raise reasonable doubt. Trial counsel might have chosen not to call the 9-1-1 caller as part of his trial strategy. Trial counsel integrated this theory into his cross-examinations and closing argument. Therefore, his choice not to call the 9-1-1 caller to testify is likely attributable to trial strategy. For instance, in his closing argument, trial counsel referred several times to the State's inability to call the 9-1-1 caller and continued to address her by her phone number. Trial counsel extensively questioned [the

police dispatcher] and the [9-1-1 operator] . . . on their inability to ask the 9-1-1 caller about her identity.

> Assuming that trial counsel's failure to call the 9-1-1 witness amounted to deficient performance, [d]efendant presents no evidence tending to show that the 9-1-1 caller's testimony would have raised any reasonable doubt. Defendant merely speculates that the 9-1-1 caller, if called to testify, would have somehow provided testimony tending to change the outcome of the trial. However, there is no such evidence to provide as much as a reasonable inference into this claim. The 9-1-1 caller provided specific details about the car she saw which later matched the car occupied by [defendant's brother] and [d]efendant. It is clear from the line of questioning that trial counsel was attempting to cast doubt on the veracity of the State's witness, which, in itself, amounts to trial strategy. Therefore, trial counsel did not render ineffective assistance for likely choosing not to call the 9-1-1 caller to testify as part of his trial strategy or for choosing not to do so because the 9-1-1 caller could have actually harmed [d]efendant's case.

On appeal, defendant argues that, "[a]t the very least," he was entitled to "an evidentiary hearing so [d]efendant's trial attorney can explain why he did not attempt to locate the 9-1-1 caller and did not attempt to establish the flaws in the State's witnesses' identification of [d]efendant." Merely raising a claim for PCR does not entitle a defendant to relief or an evidentiary hearing. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, trial courts should grant evidentiary hearings only if the defendant has presented a

7

prima facie claim of IAC, material issues of disputed fact lie outside the record, and resolution of those issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013). A PCR court deciding whether to grant an evidentiary hearing "should view the facts in the light most favorable to a defendant . . . ." State v. Preciose, 129 N.J. 451, 463 (1992). However, "[a] court shall not grant an evidentiary hearing" if "the defendant's allegations are too vague, conclusory or speculative." R. 3:22-10(e)(2). Indeed, the defendant "must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance." Cummings, 321 N.J. Super. at 170.

In turn, "we review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). "If the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to post-conviction relief, . . . then an evidentiary hearing need not be granted." Ibid. (alteration in original) (quoting State v. Marshall, 148 N.J. 89, 158 (1997)). We also typically review a PCR petition with "deference to the trial court's factual findings . . . 'when supported by adequate, substantial and credible evidence.'" State v. Harris, 181 N.J. 391, 415 (2004) (alteration in

original) (quoting Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)). However, where, as here, "no evidentiary hearing has been held, we 'may exercise de novo review over the factual inferences drawn from the documentary record by the [PCR judge].'" State v. Reevey, 417 N.J. Super. 134, 146-47 (App. Div. 2010) (alteration in original) (quoting Harris, 181 N.J. at 421). We also review de novo the legal conclusions of the PCR judge. Harris, 181 N.J. at 415-16 (citing Toll Bros., 173 N.J. at 549).

To establish a prima facie claim of IAC, a defendant must satisfy the two-prong Strickland test, and "bears the burden of proving" both prongs of an IAC claim "by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012). Specifically, a defendant must show that (1) "counsel's performance was deficient" and he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment" to the United States Constitution; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694; see also Fritz, 105 N.J. at 52. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Under the first <u>Strickland</u> prong, "a defendant must overcome a 'strong presumption' that counsel exercised 'reasonable professional judgment' and 'sound trial strategy' in fulfilling his responsibilities." <u>State v. Hess</u>, 207 N.J. 123, 147 (2011) (quoting <u>Strickland</u>, 466 U.S. at 689-90). Indeed, "counsel is strongly presumed to have rendered adequate assistance," <u>Strickland</u>, 466 U.S. at 690, as measured by a standard of "reasonable competence." <u>Fritz</u>, 105 N.J. at 53. However, "'[r]easonable competence' does not require the best of attorneys," <u>State v. Davis</u>, 116 N.J. 341, 351 (1989), and "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." <u>Strickland</u>, 466 U.S. at 688-89.

For that reason,

> an otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with his or her counsel's exercise of judgment during the trial. The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt. As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of a fair trial.

A-2668-18T1

[State v. Castagna, 187 N.J. 293, 314-15 (2006) (citations, internal quotation marks, and brackets omitted).]

Thus, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689.

Under the second Strickland prong, defendant must prove prejudice. Fritz, 105 N.J. at 52. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. This prong "is an exacting standard" and "'[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or the result reached.'" State v. Allegro, 193 N.J. 352, 367 (2008) (alteration in original) (quoting Castagna, 187 N.J. at 315).

Applying these principles, we are satisfied defendant failed to make a prima facie showing of IAC under the Strickland/Fritz test, and we discern no abuse of discretion in the judge's denial of defendant's PCR petition without an evidentiary hearing. We agree with Judge Gizzo that defendant's contention that his attorney failed to effectively cross-examine Rios is belied by the record. As to defendant's contention that his attorney was ineffective by failing to investigate the 9-1-1 caller, an attorney's failure to investigate "is a serious

deficiency that can result in the reversal of a conviction." Porter, 216 N.J. at 353. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. However, "when a [defendant] claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Cummings, 321 N.J. Super. at 170.

Here, as the judge explained, other than rank speculation, defendant offered no support for his claim that the 9-1-1 caller would have exonerated him. See id. at 171 (rejecting the defendant's contention that trial counsel was ineffective by failing to adequately investigate the case by interviewing witnesses because defendant "offer[ed] nothing as to what those witnesses would have said had they been interviewed."). As the judge noted, given the equally plausible likelihood that the 9-1-1 caller's testimony would have "actually harmed [d]efendant's case," his attorney's "reasonable professional judgment[] support[ed] the limitation[] on investigation." Strickland, 466 U.S. at 691.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2668-18T1