# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3691-22

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JEROME BOYNTON,

      Defendant-Appellant.

_____

Submitted November 19, 2024 – Decided April 16, 2025

Before Judges Gooden Brown and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment Nos. 15-11-2015 and 15-11-2016.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Raymond S. Santiago, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jerome Boynton appeals from the April 21, 2023, Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

Following a 2018 jury trial, defendant was convicted of second-degree sexual assault, N.J.S.A. 2C:14-2(b), and third-degree child endangerment, N.J.S.A. 2C:24-4(a), as charged in Indictment No. 15-11-2015 (the first indictment). The convictions stemmed from a 2015 incident during which defendant had sexual contact with a seven-year-old girl. At trial, in addition to the victim's testimony, the State presented a forensic scientist who was qualified as an expert in DNA analysis.

In affirming defendant's convictions, in an unpublished opinion, we recounted the expert's testimony as follows:

> Christopher Szymkowiak, a forensic scientist, testified for the State as an expert in forensic DNA analysis. He examined . . . four samples [from the victim's clothing] for both autosomal as well as Y-short tandem repeat (Y-STR) DNA. Szymkowiak explained that using autosomal DNA testing, an analyst can conclude that someone is the source of a DNA profile, meaning the analyst is "confident that the individual to the exclusion of all . . . [other] people has left that DNA." In contrast, because Y-STR DNA profiles are not unique to a specific person and will be identical for all males in a "paternal line," an analyst can only conclude that "someone matches a profile" or that "they [are] excluded," but "[cannot] do any source attribution

because we know . . . that [the] male line all [have] that same profile."

. . . .

After Szymkowiak obtained a reference sample of defendant's DNA, based on autosomal DNA analysis, Szymkowiak excluded defendant as "a possible contributor to the minor DNA profile obtained" from the mixture found on both the [victim's] underwear and . . . T-shirt samples. However, Szymkowiak testified "the [Y-STR DNA] profile of [defendant] matche[d] the major [Y-STR] DNA profile obtained" in [the victim's] underwear samples. Based on the data, Szymkowiak concluded defendant "[could not] be excluded" as a contributor but conceded on cross-examination his conclusion did not have much statistical value in determining whether or not somebody should be included or excluded because "a lot of people could potentially have a match too." Szymkowiak testified further that his testing revealed there was "a second male who had contributed to the DNA . . . found on the underwear" but he had no "reference" sample "to compare that minor profile to."

[State v. Boynton, No. A-2574-18 (App. Div. Sept. 13, 2021) (slip op. at 10-12) (first, seventh, and twelfth alterations added) (first, fourth, and fifth omissions added) (footnotes omitted)].

We also affirmed defendant's aggregate ten-year prison sentence, subject to the

No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, id., slip op. at 2, 36, and the

Supreme Court denied certification, State v. Boynton, 249 N.J. 59 (2021).

In 2019, immediately following the State's opening statement in a bench trial, defendant entered a negotiated guilty plea to second-degree sexual assault, as charged in Indictment No. 15-11-2016 (the second indictment). The charge stemmed from another 2015 incident during which defendant had sexual contact with a five-year-old girl. At the plea hearing, defendant's attorney told the judge that he "read each of the questions [on the plea forms] line by line" with defendant to ensure that he understood, and that defendant "signed off" on the plea agreement. The plea form specified that the ten-year NERA sentence recommended by the prosecutor would run "consecutive to defendant's sentence on [Indictment No.] 15-11-2015." In addition, the prosecutor recited the terms of the plea agreement on the record, including the fact that the sentence would "run consecutive to" defendant's sentence on the first indictment, as well as the fact that the prosecutor would move to dismiss the remaining two counts of the indictment at sentencing.[1]

Thereafter, during the plea colloquy, after confirming that defendant read, understood, initialed, and signed the plea forms, the judge reiterated that the sentence imposed would "run consecutive" to the sentence on the first

---

[1] The remaining counts consisted of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), and second-degree child endangerment, N.J.S.A. 2C:24-4(a).

indictment. The judge explained to defendant that "regardless of what happens" with defendant's then-pending appeal of the convictions on the first indictment, "this plea will stand." The judge added that even if his appeal was successful, the "only difference" for this case "would be a change in th[e] sentence because this is potentially consecutive to that sentence." Defendant indicated that he understood and provided a factual basis for the plea. Defendant told the judge he was entering the plea knowingly and voluntarily, without force or coercion, and with a full understanding of the nature of the charge, the State's proofs, the terms of the agreement, and the consequences of the plea. Defendant also expressed satisfaction with his attorney's representation and declined the judge's offer for additional time to speak with his attorney.

Subsequently, in accordance with the plea agreement, the judge sentenced defendant to ten years in prison, subject to NERA, to run consecutive to his sentence on the first indictment.[2] We later affirmed defendant's conviction and sentence on a Sentence Only Argument calendar, pursuant to Rule 2:9-11, and the Supreme Court denied certification. State v. Boynton, 247 N.J. 164 (2021).

---

[2] A special sentence of parole supervision for life, N.J.S.A. 2C:43-6.4, and restrictions under Megan's Law, N.J.S.A. 2C:7-1 to -23, were imposed on both indictments.

A-3691-22

Defendant filed a timely PCR petition and was assigned counsel. In his petition, defendant asserted that "[t]rial counsel was ineffective in failing to use an expert witness during trial" to challenge the State's DNA expert witness on the first indictment, and that plea counsel "never fully explained to [defendant] what [a] consecutive sentence would mean as far as actual prison time" on the second indictment. In support of the DNA claim, defendant acknowledged that trial counsel had retained a DNA expert who had opined in a 2017 report that the State's DNA results could not "be considered to be scientifically reliable." However, the expert died prior to trial. Defendant submitted a 2023 report prepared by a different DNA expert to support his contention that "there [were] several deficiencies with the State's forensic examination that should have been [brought] to the attention of the jury" through the production of a replacement expert witness.

Following oral argument, the PCR judge found defendant failed to establish a prima facie case of ineffective assistance of counsel (IAC) and denied defendant's petition without an evidentiary hearing in an order entered on April 21, 2023. In an accompanying written opinion, the judge reviewed the facts and procedural history and applied the governing legal principles. The judge found

6

that despite trial counsel's failure to "retain[] the services of a new expert" to replace the deceased expert,

> [a] review of the trial transcript shows that trial counsel demonstrated an exceptional familiarity with the complexities of DNA analysis and engaged in a lengthy and effective cross[-]examination of [the State's expert], establishing that the major DNA samples were matches of the victim and that several other minor profiles from other samples did not match the samples for defendant. In addition, counsel had [the State's expert] confirm that Y-STR testing indicated the presence of a second male profile that did not match defendant. Trial counsel was successful in challenging [the expert]'s failure to strictly follow the State Police Laboratory's protocol manual regarding quantities of DNA extract and sterile water mixture resulting in [the expert]'s concession that reliability could be undermined[.]

The judge further noted that trial counsel "capitalized" on the shortcomings in the State's expert's testimony "by arguing during summation that 'there [were] significant problems with the sample, the testing, and the statistical evaluation of th[e] evidence,' and that [the State's expert's] finding was not 'definitive' and was not 'reliable.'" (Last alteration added) (quoting Boynton, slip op. at 26). In light of "the compelling concessions" trial counsel obtained from the State's expert, the judge concluded "that trial counsel's failure to retain an expert to confirm and testify to the findings in the [deceased defense expert's] report" did not establish deficient performance.

In rejecting defendant's IAC claim regarding his plea counsel, the judge found the claim was "contradicted by defendant's statements during the plea allocution," which included "defendant's very specific and repeated acknowledgments that a consecutive sentence would be imposed." As such, defendant's "bare assertion that plea counsel misled him" was unsupported. The judge also found that defendant "failed to show that the outcome would have been different without the purportedly deficient performance" because he "clearly decided to not risk the possibility of a life sentence" after hearing "the prosecutor's graphic opening statement of how she intended to prove that [defendant] repeatedly sexually abused a five-year-old child." This appeal followed.

On appeal, defendant raises the following arguments for our consideration:

> THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF COUNSEL['S] INEFFECTIVENESS.
>
> A. Trial Counsel Failed to Pursue an Expert Witness to Challenge the Findings of the State's DNA Expert Witness.
>
> B. Plea Counsel Misadvised Defendant Regarding the Meaning of a Consecutive Sentence.

We begin by setting out the guideposts that inform our review. "We review the legal conclusions of a PCR judge de novo," State v. Reevey, 417 N.J. Super. 134, 146 (App. Div. 2010), but "review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing," State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). "[W]here . . . no evidentiary hearing was conducted," as here, "we may review the factual inferences the [trial] court has drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (citing State v. Harris, 181 N.J. 391, 421 (2004)).

An evidentiary hearing is only required when (1) a defendant establishes "a prima facie case in support of [PCR]," (2) the court determines that there are "material issues of disputed fact that cannot be resolved by reference to the existing record," and (3) the court determines that "an evidentiary hearing is necessary to resolve the claims" asserted. State v. Porter, 216 N.J. 343, 354 (2013) (alteration in original) (quoting R. 3:22-10(b)); see also R. 3:22-10(e)(2) (providing "[a] court shall not grant an evidentiary hearing . . . if the defendant's allegations are too vague, conclusory or speculative"). Indeed, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need

not be granted." Brewster, 429 N.J. Super. at 401 (omission in original) (quoting State v. Marshall, 148 N.J. 89, 158 (1997)).

"To establish a prima facie case, [a] defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b). Moreover, a defendant must make this showing "by a preponderance of the credible evidence." State v. Goodwin, 173 N.J. 583, 593 (2002). Rule 3:22-2 provides five grounds for PCR. Applicable here is defendant's claim of a "'substantial denial in the conviction proceedings'" of his "state or federal constitutional rights," namely, his constitutional right to the effective assistance of counsel. State v. Preciose, 129 N.J. 451, 459 (1992) (quoting R. 3:22-2(a)).

To establish a prima facie claim of the denial of the effective assistance of counsel as contemplated under R. 3:22-2(a), a defendant must demonstrate that the performance of counsel fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687-88 (1984), and adopted in State v. Fritz, 105 N.J. 42, 49-58 (1987), and that the outcome would have been different without the purported deficient performance. Stated differently, a defendant must show that: (1) counsel's

performance was deficient; and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58.

To satisfy the first prong, a defendant must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. "[I]n making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. at 689. As such, a defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

"Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999). "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. For that reason,

> an otherwise valid conviction will not be overturned
> merely because the defendant is dissatisfied with

A-3691-22

[defense] counsel's exercise of judgment during the trial. The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt. As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal "except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of [a] fair trial."

[State v. Castagna, 187 N.J. 293, 314-15 (2006) (second alteration in original) (citations omitted) (quoting State v. Buonadonna, 122 N.J. 22, 42 (1991)).]

See also Harrington v. Richter, 562 U.S. 86, 111 (2011) (noting that "Strickland does not . . . requir[e] for every prosecution expert an equal and opposite expert from the defense," and "[i]n many instances cross-examination will be sufficient to expose defects in an expert's presentation").

For IAC claims arising from a guilty plea,

[p]lea counsel's performance will not be deemed deficient if counsel has provided the defendant "correct information concerning all of the relevant material consequences that flow from such a plea." State v. Agathis, 424 N.J. Super. 16, 22 (App. Div. 2012) (citing State v. Nuñez-Valdez, 200 N.J. 129, 138, 140 (2009)). Stated another way, counsel must not "'provide misleading, material information that results in an uninformed plea.'" State v. Gaitan, 209 N.J. 339, 353 (2012) (quoting Nuñez-Valdez, 200 N.J. at 140).

[State v. Vanness, 474 N.J. Super. 609, 624 (App. Div. 2023) (citation reformatted).]

12

To satisfy the second <u>Strickland</u>/<u>Fritz</u> prong, "[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached." <u>State v. Chew</u>, 179 N.J. 186, 204 (2004) (citing <u>Strickland</u>, 466 U.S. at 694). This prong generally requires that a defendant establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. In the context of a guilty plea, to satisfy the second prong,

> the defendant must establish a reasonable probability that he or she would not have pled guilty but for counsel's errors. <u>Gaitan</u>, 209 N.J. at 351. Thus, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." <u>State v. O'Donnell</u>, 435 N.J. Super. 351, 371 (App. Div. 2014) (quoting <u>Padilla v. Kentucky</u>, 559 U.S. 356, 372 (2010)).
>
> [<u>Vanness</u>, 474 N.J. Super. at 624 (citation reformatted).]

In that regard, "[s]olemn declarations in open court carry a strong presumption of verity." <u>State v. Simon</u>, 161 N.J. 416, 444 (1999) (alteration in original) (quoting <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)).

Failure to meet either prong of the two-pronged <u>Strickland</u>/<u>Fritz</u> test results in the denial of a petition for PCR. <u>State v. Parker</u>, 212 N.J. 269, 280 (2012) (citing <u>State v. Echols</u>, 199 N.J. 344, 358 (2009)). That said, "courts are

permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not, to dismiss the claim without determining whether counsel's performance was constitutionally deficient." Gaitan, 209 N.J. at 350 (citation omitted) (citing Strickland, 466 U.S. at 697); see also State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (explaining the burden rests on the defendant requesting an evidentiary hearing to "do more than make bald assertions that he was denied the effective assistance of counsel").

Applying these principles, we agree with the PCR judge that defendant failed to establish a prima facie IAC claim. We discern no abuse of discretion in the judge's denial of defendant's PCR petition without an evidentiary hearing, and we affirm substantially for the reasons stated in the judge's comprehensive and well-reasoned written decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3691-22